**Trudy WILSON–SIMMONS, Plaintiff,**

v.

**LAKE COUNTY SHERIFF'S DEPARTMENT, et al., Defendants.**

No. 1:96 CV 2359.

United States District Court, N.D. Ohio, Eastern Division.

Oct. 22, 1997.

James R. Goodluck, Joseph R. Compoli, Jr., Cleveland, OH, for plaintiff.

William L. Sheroke, Office of Pros. Atty., Painesville, OH, Steven J. Forbes, Janik & Dunn, Cleveland, OH, for Defendant.

## MEMORANDUM OPINION AND ORDER

NUGENT, District Judge.

This matter is before the Court upon the Motion for Summary Judgment (Document # 20) filed by Defendants Lake County Sheriffs Department and Sheriff Daniel Dunlap. For the reasons that follow, Defendants' Motion is GRANTED.

### Factual Background

The following facts have been gleaned from the deposition of Plaintiff Trudy Wilson–Simmons, the affidavit of Jail Administrator Captain Frank Leonbruno, and various undisputed internal memoranda of the Lake County Sheriffs Department:

Ms. Wilson–Simmons began working as a correction officer for the Lake County Sheriffs Department in March, 1990. She currently holds the same position and works at the Lake County Jail where inmates are classified as minimum, medium, and maximum security, and are housed on the second, fourth and fifth floors of the facility. According to jail policy, correction officers not only work on the floors, but are also assigned to duty in booking, central control, and tower on a rotating basis.

On February 7, 1995, Ms. Wilson–Simmons complained to Captain Leonbruno that other correction officers were using the jail's electronic mail system (hereinafter e-mail) to make racial slurs against her. However, she refused to provide any information about the e-mail so that he could investigate. Instead, Ms. Wilson–Simmons orally requested to view all e-mails for the month of January, 1995. Captain Leonbruno advised her to submit this request in writing.

Immediately following his meeting with Ms. Wilson–Simmons, Captain Leonbruno issued a memorandum to all correction officers and supervisors explaining that a correction officer had made allegations regarding racist e-mail. The memorandum further explained that such conduct would not be tolerated and

that anyone found doing so would be "disciplined to the full extent permitted under the law." No other complaints were made following this memorandum.

The day after her meeting with Captain Leonbruno, Ms. Wilson–Simmons submitted a written request asking to view the e-mails of five corrections officers for the month of January, 1995. The Department did not refuse the request but notified her that the cost of such a request—which would require a computer specialist to spend one hundred and forty hours to reconstruct the e-mails requested—amounted to $2,521.40. Therefore, Ms. Wilson–Simmons was asked to narrow her request or provide additional information so the Department could investigate her allegations. She again refused.

Following her complaints regarding the e-mail, Ms. Wilson–Simmons believes she was treated unfairly and that the Department retaliated against her because of her complaints. Specifically, Ms. Wilson–Simmons suspects that she had been assigned to the maximum security area on the fourth floor more than other correction officers; that her overtime papers had been lost requiring her to file them again; and, that she unjustly received written warnings from her supervisors—she claims all in retaliation for her complaint about the alleged racist e-mail.

### Procedural History

Ms. Wilson–Simmons filed a Complaint against the Department and Sheriff Daniel A. Dunlap on October 30, 1996, alleging that both Defendants unlawfully discriminated against her on the basis of her race and retaliated against her for complaining about it in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et. seq., 42 U.S.C. §§ 1981 and 1983, as well as Chapter 4112 of the Ohio Revised Code. Defendants filed an Answer on November 20, 1996, in which they denied the allegations of discrimination and retaliation contained in the Complaint. Following discovery, Defendants filed a Motion for Summary Judgment. Plaintiff filed a Brief in Opposition to Defendants' Motion for Summary Judgment. Defendants then filed a reply memorandum. The Motion for Summary Judgment and the corresponding briefs are now before the Court.

## Summary Judgment Standard

Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), *see also U.S. v. Hodges X–Ray, Inc.*, 759 F.2d 557, 562 (6th Cir.1985).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir.1995) (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552–53). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiffs position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir.1995) (quoting *Anderson*, at 248–49, 106 S.Ct. at 2510–11, 91 L.Ed.2d 202 (1986)). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citation omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Department of Transportation*, 53 F.3d 146, 149 (6th Cir.1995). The text of FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

*Id.* The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. This means that although the court must carefully review the evidence submitted by the movant, the trial court is not obligated to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street*, 886 F.2d at 1479–80 (citation omitted). "Rather in the reasoned exercise of its judgment the court may rely on the moving party's unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are 'uncontroverted.'" *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 410 (6th Cir.1992).

In sum, proper summary judgment analysis entails:

> the threshold inquiry of determining whether there is the need for a trial—

whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

### Discussion

In her Complaint, Ms. Wilson–Simmons alleges that both the Lake County Sheriff's Department and Sheriff Dunlap wrongfully discriminated against her on the basis of her race and retaliated against her for engaging in protected activity. However, two matters need to be addressed before discussing the substance of these claims.

First, in addition to suing the Lake County Sheriffs Department, Ms. Wilson–Simmons sued Sheriff Dunlap individually. Defendants argue in their Motion for Summary Judgment that, as a matter of law, Sheriff Dunlap cannot be held individually liable for a violations of Title VII.

The Sixth Circuit has determined that an individual supervisor may not be held personally liable under Title VII. *Wathen v. General Electric Co.,* 115 F.3d 400 (6ᵗʰ Cir. 1997). Likewise, this Court has concluded that the same reasoning that precludes individual liability under Title VII applies to preclude similar suits under Chapter 4112 of the Ohio Revised Code. *Czupih v. Card Pak, Inc.,* 916 F.Supp. 687 (N.D.Ohio 1996). *See also, Gausmann v. City of Ashland,* 926 F.Supp. 635 (N.D.Ohio 1996). *But see, De-Loach v. American Red Cross,* 967 F.Supp. 265, 1997 WL 355280 (N.D.Ohio June 16, 1997).[1]

Nevertheless, resolution of this case does not require a determination of whether Sher-iff Dunlap may be held individually liable as a matter of Ohio law because the Plaintiff has demonstrated that, in fact, she did not sue Sheriff Dunlap in his individual capacity. In response to Defendants' Motion for Summary Judgment, Ms. Wilson–Simmons explained that, in her estimation, the Lake County Sheriff's Department and Sheriff Dunlap are "inextricably linked" and that Sheriff Dunlap and the Lake County Sheriff's Department are **"inherently one and the same."** (emphasis in original). Thus, based upon these assertions, it is clear that Sheriff Dunlap has been named as a defendant only in his official capacity as Sheriff of Lake County. Accordingly, the analysis of her claims, *infra,* will relate solely to the actions of the Lake County Sheriff's Department.

Second, Plaintiff's claims need to be clarified. In their Motion for Summary Judgment, Defendants argue that Plaintiff cannot maintain a case for a racially hostile work environment and briefed the issue accordingly. However, in Plaintiff's Brief in Opposition, she emphatically denies that she presents a claim for a racially hostile work environment. To the contrary, she contends that her claims consist of allegations that the Lake County Sheriff's Department discriminated and retaliated against her—not that it maintained a racially hostile work environment.[2] Accordingly, Plaintiff's claims will be addressed as employment discrimination and retaliation claims under Title VII, and not as a racially hostile work environment case.

### Discrimination Claims [3]

 In order to establish a case of race discrimination under Title VII a Plaintiff

---

**1.** The Ohio Supreme Court has never addressed the issue of individual supervisor liability under Chapter 4112 of the Ohio Revised Code, but it recently determined that it will answer this Court's Certification of a State Law Question on this issue in *Genaro, et al. v. Central Transport, et al.,* No. 97–1595, 80 Ohio St.3d 1412, 684 N.E.2d 705 (October 1, 1997)(order accepting the question).

**2.** Ms. Wilson–Simmons's deposition testimony is replete with sweeping allegations of racially discriminatory conduct directed toward others within the Department. Nevertheless, she lacks first-hand knowledge of these other alleged inci-dents, she admits that these other alleged incidents did not involve her personally, and she has presented absolutely no evidence to support her allegations.

**3.** The United States Supreme Court has utilized Title VII framework in analyzing racial discrimination in employment cases under both 42 U.S.C. § 1981 and 42 U.S.C. § 1983. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 2377–78, 105 L.Ed.2d 132; *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407. Likewise, the Ohio Supreme Court has determined that "federal case law interpreting Title

must present either direct evidence of intentional discrimination on the part of the Defendant or show the existence of circumstantial evidence which creates an inference of discrimination. *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1246 (6th Cir. 1995). When a plaintiff does not possess direct evidence of discrimination, as in this case, she may use circumstantial evidence to infer discrimination as explained in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The now familiar burden-shifting framework of *McDonnell Douglas* and its progeny requires a plaintiff in a Title VII action to first establish a prima facie case of racial discrimination by demonstrating that she: 1) is a member of a protected class; 2) was qualified for the position; 3) suffered an adverse employment decision; and, 4) was replaced by a person outside the protected class or, alternatively, was treated worse than similarly situated non-protected persons. *Id.; Mitchell v. Toledo Hospital,* 964 F.2d 577 (6th Cir.1992); *Shah v. General Electric Co.,* 816 F.2d 264, 268 (6th Cir.1987).

A plaintiff who establishes a prima facie case creates a presumption that the employer unlawfully discriminated against her. The burden, then, shifts to the defendant to rebut the presumption of discrimination by producing a legitimate, nondiscriminatory reason for its decision. "The defendant need not persuade the court that it was actually motivated by the proffered reasons." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). If the prima facie case is so rebutted by the defendant, the plaintiff then has the burden to prove that the proffered reasons were not the true reasons, but in fact, constituted a pretext for intentional discrimination on the basis of race. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ In their Motion for Summary Judgment, Defendants contend Ms. Wilson–Simmons cannot establish a prima facie case of discrimination because she suffered no adverse employment action and she was not treated differently than non-protected employees. In opposition, Ms. Wilson–Simmons contends that she suffered discrimination at the hands of the Department because of the alleged existence of a racist e-mail as well as her claim that the Lake County Sheriff's Department failed to take adequate and effective action to respond to her complaint.[4]

Applying the *McDonnell Douglas* framework to the facts of this case, it is undisputed that Ms. Wilson–Simmons is a member of a protected class and qualified for her position as a Correction Officer. The parties dispute, however, whether or not Ms. Wilson–Simmons suffered any adverse employment action relating to her discrimination claims.

The Sixth Circuit stated in *Kocsis v. Multi-Care Management, Inc.,* 97 F.3d 876, 885 (6th Cir.1996) that an adverse employment action is "a materially adverse change in the terms of her employment." Examples include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.* at 886 (quoting *Crady v. Liberty Nat'l Bank and Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993)).

■ In this case, Ms. Wilson–Simmons has failed to show an adverse employment

VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S.Code, is generally applicable to cases involving alleged violations of [Ohio Revised Code] Chapter 4112." *Ohio Civ. Rights Comm. v. Ingram,* 69 Ohio St.3d 89, 630 N.E.2d 669, 672 (1994) (citing *Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civ. Rights Comm.,* 66 Ohio St.2d 192, 421 N.E.2d 128, 131 (1981)). Accordingly, analysis of the Plaintiff's federal and Ohio claims will be considered together.

**4.** It should be noted that Ms. Wilson–Simmons has no first-hand knowledge of the alleged racist

e-mail but claims she learned of it from her co-worker, Warren Johnson. Nevertheless, even Mr. Johnson's affidavit—the only arguable evidence that the alleged racist e-mail ever existed—is fraught with hearsay and demonstrates the complete dearth of admissible and reliable evidence in this matter. Mr. Johnson merely avers that he was told by another correction officer that still other correction officers were responsible for derogatory statements on the e-mail.

action related to her discrimination claims. Neither the alleged existence of a racist e-mail nor the Lake County Sheriff's Department's response to her complaints constitute adverse employment actions as detailed in *Kocsis, supra.* Indeed, Ms. Wilson–Simmons admitted in her deposition testimony that she has received no loss in pay, rank, or benefits due to her allegations. Even if these circumstances could be considered adverse employment actions, there has been no evidence provided to suggest that any members of a non-protected class were treated differently in regard to these matters.

Based on the aforementioned evidence, Ms. Wilson–Simmons cannot establish that she suffered an adverse employment decision nor that she was treated worse than similarly-situated non-protected employees. Thus she cannot demonstrate a prima facie case of disparate treatment under the *McDonnell Douglas* framework and Defendants are entitled to judgment as a matter of law on those claims.

### Retaliation Claims

■ Claims for retaliation under Title VII utilize a similar burden shifting analysis, however, a prima facie case for retaliation requires a plaintiff to demonstrate: 1) she was engaged in a protected activity; 2) the exercise of her protected rights was known to the defendant; 3) the defendant thereafter took employment action adverse to the plaintiff; and, 4) a causal connection exists between the protected activity and the adverse employment action. *Canitia v. Yellow Freight System, Inc.,* 903 F.2d 1064 (6th Cir. 1990), *cert. denied,* 498 U.S. 984, 111 S.Ct. 516, 112 L.Ed.2d 528 (1990).

■ On this issue, Defendants again contend Ms. Wilson–Simmons cannot establish a prima facie case because she did suffer any adverse employment action. They further contend that even if she could show adverse employment action, their actions were justified and were not causally connected to her filing a complaint.

There is no dispute that Ms. Wilson–Simmons engaged in protected activity by reporting alleged discrimination and that the Lake County Sheriff's Department was aware of her actions. Rather, the Defendants contest whether she suffered any adverse employment action and, if so, whether there is a causal connection between such actions and the Plaintiff's protected activity.

■ The evidence presented in this case, viewed in the light most favorable to the Plaintiff, as required by FED. R. CIV. P. 56, demonstrates that Ms. Wilson–Simmons did not suffer an adverse employment action following her complaint about the alleged racist e-mail. First, she suffered no adverse employment action by being quoted a cost of $2,521.40 to reconstruct the e-mail she requested. Despite the high cost, there is no evidence to suggest that she was quoted an inflated or inaccurate figure or that other correction officers would be charged less for the same request.

■ Next, the loss of the Plaintiff's overtime sheet did not constitute an adverse employment action in this case. She did not receive a reduction in pay nor was she deprived of pay earned. Although Ms. Wilson–Simmons suffered a slight delay in receiving her overtime pay, there is nothing to suggest that this single, isolated event constituted anything other than a clerical oversight. Therefore, this incident does not rise to the level of an adverse employment action particularly in this case where the evidence reveals the Lake County Sheriffs Department processed a large amount of overtime and immediately remedied the situation when notified of the error. Even if this delay could somehow be considered an adverse employment action, there is absolutely no evidence to causally connect this oversight to her complaint, other than the mere temporal link.

■ Ms. Wilson–Simmons further complains that the Lake County Sheriffs Department retaliated against her by unfairly assigning her to duty on the fourth floor with maximum security inmates. This assignment does not constitute adverse employment action in this case because, although Ms. Wilson–Simmons perceived the assignment to fourth floor duty as less favorable, the fourth floor is clearly part of her duties as a correction officer. Furthermore, even if this duty could be considered less favorable

than other duties in the correction officer rotation, Ms. Wilson–Simmons has presented no evidence to demonstrate that she was singled out and given a disproportionate number of assignments to the fourth floor. In fact, the evidence produced in this case reveals that other officers—including members of a non-protected class—were assigned to the duty more frequently than she during the relevant period.

▮ Finally, as to the Plaintiff's allegation that her supervisors unfairly reprimanded her following her complaint, the evidence again demonstrates that she did not receive an adverse employment action in this regard. The documentary evidence provided by Ms. Wilson–Simmons to support this claim consists of internal requests by the Plaintiff's supervisor to explain certain of her actions. Although these requests question Ms. Wilson–Simmons's actions in various aspects of her job—ranging from securing doors to the use of white-out in her log—none of these requests rise to the level of an adverse employment action as defined in *Kocsis, supra.* To the contrary, the affidavit of Captain Leonbruno explains that all discipline is governed by the Collective Bargaining Agreement, that supervisors often ask correction officers for clarification of conduct or advise correction officers of proper procedures, and that such requests for clarification or advice on procedures do not constitute discipline. In fact, "they cannot form the basis of a suspension, or reduction in pay, or any disciplinary action whatsoever."

Thus, for the foregoing reasons, Ms. Wilson–Simmons has failed to demonstrate that she suffered adverse employment action in retaliation for her protected activity and Defendants are entitled to judgment as a matter of law on those claims.

### Conclusion

A thorough review of Defendants' Motion for Summary Judgment and the evidence offered in support thereof reveals that no material issues of fact remain to be litigated in this matter and Lake County Sheriff's Department Sheriff Dunlap are entitled to judgment as a matter of law. Accordingly, Defendants' Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.