**Cindy AKERS Plaintiff**

v.

**Donald ALVEY, individually and Cabinet for Families and Children Defendants**

**No. 3:99CV221–H.**

United States District Court, W.D. Kentucky, at Louisville.

Sept. 19, 2001.

Kathleen M. Flynn, Segal, Stewart, Cutler, Lindsay, Janes & Berry, Louisville, KY, Kenneth L. Sales, Sales, Tillman & Wallbaum, Louisville, KY, for Cindy Akers.

Stephen Beville Pence, U.S. Attorney's Office, Louisville, KY, Mark D. Hardy, Frankfort, KY, Ruth Ann Cox, Michael D. Ekman, Pedley Zielke & Gordinier PLLC, Louisville, KY, Sheila F. Redmond, Sherri D. Pate, Frankfort, KY, for Donald Alvey.

Mark D. Hardy, Frankfort, KY, Richard M. Sullivan, Edward L. Lasley, Conliffe, Sandmann & Sullivan, Louisville, KY, Sheila F. Redmond, Sherri D. Pate, Frankfort, KY, for Cabinet for Families and Children.

## MEMORANDUM OPINION

HEYBURN, District Judge.

This is a gender discrimination case. There now remains Plaintiff's § 1983 claim against Defendant Alvey in his individual capacity, her retaliation claim against Defendant Cabinet for Families and Children (the "Cabinet"), her hostile work environment claim against the Cabinet and her claim for the tort of outrage against Alvey and the Cabinet. Both Alvey and the Cabinet have moved for summary judgment.

### I.

Initially, the complaint lacked sufficient detail to maintain its allegations. Subsequently, Plaintiff supplemented the complaint with a lengthy affidavit, averring the following facts. She was hired on June 16, 1997, as a family support worker with the Cabinet in Leitchfield, Kentucky. In June 1998, Defendant Alvey became her supervisor and in August of the same year was promoted to supervisor of the entire office. Plaintiff says that during Alvey's entire tenure as her supervisor, he engaged in sexually offensive conduct and made sexually offensive remarks toward her. More specifically, Alvey made daily comments about Plaintiff's physique, constantly attempted to obtain information about her sexual relationship with her new boyfriend,

make overt comments about his desire to have sexual intercourse with her, commented to her co-workers about her sexual history and physique, made sexually suggestive remarks about other women in the office, and asked Plaintiff specific questions about her sexual conduct. In all, Plaintiff now details about 30 separate specific incidents of harassment over a 2½ month period. This number does not include several occasions of sexual references or harassment which Plaintiff says occurred daily or constantly.

On August 18, 1998, Plaintiff reported this behavior to Cabinet officials. The Cabinet finished its investigation in late October. Plaintiff alleges that they conducted only a cursory investigation and informed her that they could not substantiate her claims of sexual harassment. All parties agree that Plaintiff did not advise the Cabinet about all her current complaints. From the record, it appears that the Cabinet conducted a thorough investigation.

After the investigation was completed, Plaintiff was reassigned to an office of the Department for Community Based Services in Elizabethtown, Kentucky. Alvey kept his position in the Leitchfield office. Plaintiff alleges that as a consequence of her complaint, Alvey refused to speak to her, instructed other employees not to associate with her, and criticized her handling of cases. On January 1, 1999, Plaintiff became a permanent employee in the Elizabethtown office working as a domestic violence and child abuse investigator, a reassignment Plaintiff says she was forced to take. After six months of antagonism at the new workplace, Plaintiff avers, she resigned to take a job in the private sector. Four months later she reapplied for a position with the Cabinet in the Richmond office. Plaintiff says that she was denied that employment due to a negative recommendation from Alvey.

## II.

In order to establish a claim of retaliation, Plaintiff must prove that (1) she engaged in an activity protected by Title VII, (2) the exercise of that protected right was known to Defendant, (3) Defendant thereafter took an employment action adverse to Plaintiff, or Plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor, and (4) a causal connection existed between the protected activity and the adverse employment action or harassment. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir.2000). No doubt exists that Plaintiff engaged in activity protected by Title VII and that her exercise of those rights—namely, the filing of a discrimination complaint—was known to Defendant. The extremely close temporal connection between Plaintiff's exercise of her protected rights and the employment action—namely, her transfer to another office—provides a basis for a reasonable jury to find a causal connection between the two. However, based on its investigatory findings concerning Plaintiff's claim against Alvey, the Cabinet might reasonably want to separate the two employees.

Assuming that Plaintiff can establish causation, the viability of the claim turns on whether the transfer amounts to an adverse employment action as defined in our cases. As a basis for her claim, Plaintiff asserts that her transfer to Elizabethtown was adverse because (1) she was unfamiliar with Elizabethtown, (2) she was assigned to a job for which she was not properly trained, (3) the transfer deprived her of an opportunity for an evaluation and future advancement and (4) she did not like her new job.

In order to establish an adverse employment action, Plaintiff must show "[a] significant change in employment status, such as hiring, firing, failing to

promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

In its analysis of what constitutes a "materially adverse" employment action, the Sixth Circuit has noted that "reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions ..." *Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876, 885 (1996). Even a demotion, if not evidenced by a decrease in pay or benefits, generally is not an adverse employment action. *Id.* (citing *Yates v. Avco Corp.,* 819 F.2d 630, 638 (6th Cir.1987)). A change in employment conditions "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Kocsis,* 97 F.3d at 886 (quoting *Crady v. Liberty Nat'l Bank and Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993)).

Even if Plaintiff was transferred involuntarily, as she avers, she has not offered evidence that the action was materially adverse. Plaintiff's job responsibilities at the Elizabethtown office were not "significantly different," she actually received an increase in pay, and her daily round-trip commute was about 60 miles shorter. Plaintiff argues that the absence of a timely evaluation creates an adverse action, but cannot demonstrate that the absence of an evaluation limited her advancement. Plaintiff has offered no evidence that the transfer was materially adverse to her career. That she ended up disliking her new job does not change the analysis. The facts indicate that the transfer was not an adverse employment action.

### III.

In Count 1 Plaintiff asserts a claim against Alvey individually under 42 U.S.C. § 1983. As this Court pointed out in its previous Memorandum, a plaintiff may bring both Title VII and § 1983 claims. However, for all practical purposes, the two claims are the same. The Sixth Circuit has held that where there is liability under Title VII, there should be liability under § 1983, and if there is no liability under Title VII there can be no liability under § 1983. *Grano v. Dept. of Dev.,* 637 F.2d 1073, 1082 (6th Cir.1980). Since the Sixth Circuit's decision in *Wathen v. General Electric Co.,* 115 F.3d 400 (1997), it seems undisputed that in circumstances such as these an employee like Alvey is not individually liable under Title VII. In fact, the *Wathen* court specifically considered this question in light of hostile work environment claims.

The retaliation claim is not an issue now because the Court has concluded that Plaintiff has no claim under Title VII. The only question remaining is whether Plaintiff's § 1983 claim against Alvey in his individual capacity must be dismissed because Plaintiff cannot assert such a claim under Title VII.

No court seems to have directly addressed this issue. However, § 1983 liability as alleged in Count 1 is premised upon liability under Title VII. Consequently, Plaintiff must be able to make out a Title VII case generally as well as against the specific Defendant against whom she asserts the § 1983 claim. In this instance, while Plaintiff may be able to make out a Title VII claim generally, *Wathen* prevents her from asserting one against Alvey individually. Consequently, Plaintiff's § 1983 claims against Alvey in his individual capacity must be dismissed.

### IV.

Plaintiff's next claim against the Cabinet is that Alvey's actions created a hostile work environment. Defendant responds that Plaintiff's initial complaint to it assert-

ed only six allegations: (1) that Alvey humiliated her in front of a male friend on July 7, 1998; (2) that Alvey refused her permission to take an extended lunch break on July 7, 1998; (3) that on July 30, 1998, Alvey told several other employees that he and Plaintiff were seeing each other; (4) that Alvey created situations putting him alone with Plaintiff; (5) that Alvey made explicit sexual remarks and gestures; and (6) that Alvey questioned her personal relationships and sex life. Defendant argues that these allegations are not enough to create a hostile work environment and that the Court should not consider any more recent allegations because Plaintiff did not complain of them. Moreover, Defendant argues that Plaintiff's claims are barred by the doctrine established in *Ellerth, supra,* and *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). These facts and Defendant's responses present an interesting and difficult question.

■ To prevail on a hostile work environment sexual harassment claim a plaintiff must prove that: (1) she was a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on her sex; (4) the harassment unreasonably interfered with her work performance and created a hostile work environment; and (5) the employer knew or should have known of the charged sexual harassment and failed to take reasonable care to prevent and correct any sexually harassing behavior. *Williams v. General Motors Corp.,* 187 F.3d 553, 560 (6th Cir.1999). Construing *Ellerth* and *Faragher,* *Williams* significantly reformulated the definition of a hostile work environment and changed the fifth element of the prima facie case from imposing a duty on employers to take corrective action to imposing an affirmative duty to prevent sexual harassment by supervisors.

The Court believes that Plaintiff easily meets the first four elements of the claim. Plaintiff has detailed some 30 specific instances of unwelcome sexual harassment, advances or abuse. In addition, Plaintiff recounts daily and constant sexual references and requests. These all occurred over a little more than a two-month period. Understandably, Plaintiff makes the case that these instances create a hostile work environment and damage her psychological well being. Should the jury believe Plaintiff's testimony, few would dispute that these instances meet the standard for establishing a hostile work environment.

■ The fifth element will present a more difficult analysis. For sound reasons employer liability for hostile work environment is "strict" but not absolute. For a number of years in the Sixth Circuit and some other circuits, an employer could avoid liability by responding adequately and effectively to the complaint once it learned of the harassment. *See Kauffman v. Allied Signal, Inc., Autolite Div.,* 970 F.2d 178, 184 (6th Cir.1992); *see also, e.g., Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 431–32 (7th Cir.1995). An employer could further negate its liability if it had "implemented and enforced policies explicitly prohibiting sexual harassment in the workplace and procedures designed to deal with violations of those policies." *Wathen, supra,* at 407.

■ Presently, the Supreme Court accepts the general rule that supervisor harassment resulting in a tangible adverse employment action will always subject an employer to liability, but that where there is no such action, there is an affirmative defense to a hostile work environment claim if 1) "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and 2) "plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the em-

ployer or to avoid harm otherwise." *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257; *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275. Such a defense exists because the employer's approval or acquiescence is not easily determined in cases where there has been no tangible action. This defense is provable by a preponderance of the evidence.

■■■ Defendant argues that it adopted policies to detect and discourage any harassment, and that to the extent Plaintiff reported any harassment, Defendant responded by investigating the complaints and ending any alleged harassment. Moreover, Defendant says that it is entitled to the affirmative defense because Plaintiff, by not fully reporting all the instances of alleged sexual harassment, did not fully take advantage of the preventive and corrective opportunities provided by Defendant. Plaintiff asserts that she reported the harassment, but that Defendant failed to undertake an adequate investigation and impose proper sanctions or remedies.

The initial question seems to be whether Plaintiff's reporting of only a few instances of sexual harassment out of many constitutes an unreasonable failure to take advantage of the corrective opportunities provided by Defendant.

■■■ Explaining the second element above, the Supreme Court noted that

> while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense.

*Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257. Thus where the plaintiff makes *no* effort to use *any* of her employer's remedial mechanisms this element may be satisfied as a matter of law. However, where the employee makes some effort to use the employer's remedial procedures the reasonableness of the employee's efforts is frequently a question left to the jury. Applying this principle, a Court of Appeals has held that where an employer claimed that its sexual harassment complaint policy required employees to present all complaints in writing, the jury properly considered whether an employee's oral complaints constituted a failure to make reasonable efforts to use the employer's remedial procedures. *See E.E.O.C. v. Dinuba Medical Clinic,* 222 F.3d 580, 587 (9th Cir.2000).

■■■ The Seventh Circuit explains that the second prong of the *Ellerth/Faragher* defense incorporates the "avoidable consequences doctrine" from tort law. *Savino v. C.P. Hall Co.,* 199 F.3d 925, 934 (1999). This doctrine

> encourages tort victims to act reasonably to reduce the deleterious effects of the tort, since the victim is usually in the best position to take ameliorative measures...[T]he doctrine (sometimes called the duty to mitigate damages) does this by denying recovery for the losses which are shown to have resulted from the plaintiff's failure to use reasonable efforts to avoid or prevent harm.... [A]ccordingly, unreasonable foot-dragging will result in at least a partial reduction of damages, and may completely foreclose liability.

*Id.* at 934–35.[1]

Under the facts presented here, a reasonable jury might find for either Plaintiff or Defendant. The issue should be one for the jury to consider as it determines Defendant's responsibility, if any. Similarly, the jury may also consider whether Defendant has so effectively responded to complaints of harassment that it avoids liability. *See Kauffman, supra.*

### V.

Finally, Plaintiff has asserted a claim of outrage against both Alvey and the Cabinet. In *Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1 (Ky.1990), the Supreme Court of Kentucky held that in order to prove outrageous conduct, the plaintiff must show that the defendant's conduct "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 3 (quoting *Restatement (Second) of Torts* § 46, comment d); *see also, Pierce v. Commonwealth Life Ins. Co.*, 825 F.Supp. 783, 788–89 (E.D.Ky.1993), *aff'd*, 40 F.3d 796 (6th Cir.1994).

Applying this restrictive standard, the Court concludes that while Alvey's conduct and that attributable to the Cabinet might be considered crude, and completely inappropriate, it does not rise to the level of conduct which is "atrocious and utterly intolerable" as required by Kentucky law.

The Court will enter an order consistent with this Memorandum Opinion.

### ORDER

Both Defendants have moved for summary judgment on all claims against them. The Court being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Donald Alvey's motion for summary judgment is SUSTAINED and all claims against him are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the Cabinet's motion for summary judgment with respect to Plaintiff's claim of discriminatory retaliation and the tort of outrage is SUSTAINED and those claims are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the Cabinet's motion with respect to Plaintiff's claim based upon a hostile work environment is DENIED.

---

1. The *Savino* court affirmed a jury instruction on the *Faragher* defense. The instruction allowed the jury to consider the remedial procedure policy, its implementation in practice and the extent to which Plaintiff availed herself of the procedure. The instruction read as follows:

> If you find that the plaintiff, Karen Savino, has established her claim of sexual harassment, then you may consider whether defendant, The C.P. Hall Company, has established an affirmative defense to plaintiff's established case of sexual harassment.
> The burden of proof is on the employer, The C.P. Hall Company, to prove this affirmative defense by a preponderance of the evidence in the case by establishing the following elements:
> First: that the C.P. Hall Company exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and
> Second: that the plaintiff, Ms. Savino, unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer to prevent harm otherwise.
> If you find that the plaintiff has established her claim of sexual harassment by a preponderance of the evidence, and that the defendant has not established its affirmative defense by a preponderance of the evidence, then your verdict should be for the plaintiff.
> On the other hand, if you find that the defendant has established its affirmative defense by a preponderance of the evidence, you may eliminate the defendant's liability or, alternatively, reduce the plaintiff's damages from the date you find the affirmative defense was established by the defendant.
> 199 F.3d at 934.

The trial will continue as scheduled as to Plaintiff's claim for a hostile work environment.