**Paula WATHEN, Plaintiff–Appellant,**

v.

**GENERAL ELECTRIC COMPANY, d/b/a GE Lighting North American Production Division, Kentucky Glass Plant; Walt Nyzio; Jim Kerian; and Carl Murphy, Defendants–Appellees,**

**David Six, Defendant.**

**No. 95–6339.**

United States Court of Appeals, Sixth Circuit.

Argued Sept. 24, 1996.

Decided June 10, 1997.

---

David A. Weinberg, Deno C. Capello, Jr., Weinberg & Capello, Lexington, KY, for Appellant. Thomas F. Cooke, II, Baker & Hostetler, Cleveland, OH, Jeffrey S. Walther, McDonald, Walther, Roark & Gay, Lexington, KY, for Appellee.

Before: NORRIS, SUHRHEINRICH, and BATCHELDER, Circuit Judges.

## OPINION

ALICE M. BATCHELDER, Circuit Judge.

Plaintiff Paula Wathen appeals from the district court's grant of summary judgment to her former employer General Electric Company ("GE") and three former employees, in this action involving allegations of sexual harassment. Wathen asserts claims under Title VII, and the Kentucky Civil Rights Act, as well as claims under Kentucky law for the intentional tort of outrageous conduct and for breach of contract. We affirm the district court, finding: (1) neither Title VII nor the Kentucky Civil Rights Act allows employees/supervisors to be sued in their individual capacities; (2) because GE took prompt and effective action after Wathen filed her complaint, it cannot be held liable for sexual harassment; and (3) Wathen's state law claims are without merit.

## I. STATEMENT OF THE FACTS

In reviewing a district court's decision on a motion for summary judgment, we must consider the facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Accordingly, the following account of the employees' and employer's conduct is based on the allegations in Wathen's complaint and depositions and on the undisputed evidence.

Plaintiff Paula Wathen was employed as a plant nurse at GE's Kentucky Glass Plant from April 1993 until her resignation effective January 2, 1995. In June 1993, Wathen was provided with a copy of GE's manual entitled *Integrity: The Spirit & Letter of Our Commitment* ("*Integrity*"), which pro-

**ARGUED:** Deno C. Capello, Jr., Weinberg & Capello, Lexington, KY, for Appellant. Karen B. Newborn, Baker & Hostetler, Cleveland, OH, Jeffrey S. Walther, McDonald, Walther, Roark & Gay, Lexington, KY, for Appellee. **ON BRIEF:**

hibits sexual harassment and requires that suspected violations be reported.[1]

Wathen signed and returned an acknowledgment form for the *Integrity* manual. The acknowledgment form describes the alternate channels by which an employee may report a GE policy violation.[2] In addition to receiving the manual, Wathen received training and attended follow-up meetings designed to ensure that GE employees understood the policies and procedures for reporting policy violations.

GE also disseminated and posted a "Policy Against Sexual Harassment" ("Policy"), which addresses the company's prohibitions against sexual harassment. The Policy provides specific procedures for reporting potential violations, including the steps to take when one's supervisor is involved in the incident:

Any Employee who feels that she or he has been a victim of sexual harassment should report the incident as soon as possible after the occurrence through one of the following means:

— Use the local plant/component problem-solving procedure.

— Contact any supervisor, manager, or the local Human Resource Manager.

— Contact the Division Human Resource Manager.

— Consult with members of [GE's] Professional Relations Staff (Joyce Raimer, 8*346–3048, or Roger Freibott, 8*346–6649).

If the employee's supervisor is involved in the incident, the report should be made

through one of the other alternatives described above.

The Policy was posted on the union bulletin boards and in the plant cafeteria. Wathen claims that she never saw the Policy because, as a salaried employee, she did not eat in the plant cafeteria and she had no reason to check the union bulletin boards.

Wathen claims that beginning in November 1993, the work environment at the Kentucky Plant became hostile and abusive toward women. She contends that upper-level management, including defendants Carl Murphy, Walt R. Nyzio and Jim Kerian, subjected her to sexual jokes, comments, and innuendos. Specifically, she lists a number of incidents which she claims constitute violations of Title VII by the defendants in their official and individual capacities. She further claims that these kinds of incidents permeated the sexually hostile environment at GE. Because we conclude, as we more fully discuss below, both that Title VII does not impose upon individual employees liability for sexually harassing conduct, regardless of how crude or offensive it may be, and that the facts as alleged by Wathen demonstrate that GE cannot be found to be liable under Title VII for the conduct of these employees, we decline to reproduce here the specific allegations of harassment alleged by Wathen. It suffices to say that the conduct alleged, particularly that of defendant Kerian, was crude and offensive, and not to be tolerated in the workplace.

On March 29, 1994, Wathen filed with GE a claim of sexual harassment using the re-

---

1. The *Integrity* Manual's Policy 20.2 specifically states, "[t]his policy clearly prohibits any form of harassment which creates a hostile, intimidating or offensive work environment for any employee which is based on his or her sex, race or any other diverse human characteristic. Anyone violating this policy is subject to disciplinary action up to and including discharge." The Policy further states that employees are responsible for reporting suspected violations:

Any employee who feels he or she is a victim of such harassment is urged—indeed, is required—to report it as a potential violation of this policy. GE businesses provide internal problem-solving procedures for this purpose which are sensitive to privacy concerns. The leaders of your business need your cooperation

and help if we are to rid the workplace of all such barriers to our mutual respect, teamwork, productivity and success.

2. The acknowledgment form provides in part:

Your Personal Commitment To Integrity

I acknowledge that I have received the guide to GE policies, Integrity: The Spirit & the Letter of Our Commitment.

I understand that every employee is required to comply with the policies described in the guide.

When I have a concern about a possible violation of GE policy, I will report the concern to a manager, a compliance resource within my business, company legal counsel, an ombudsperson or another contact listed in the employee guide.

porting procedures set forth in the *Integrity* manual. This claim was not made until four months after the harassment allegedly began and was the first mention Wathen made to GE of the problem. In response to Wathen's claims, GE conducted an internal investigation which resulted in defendant Kerian's termination,[3] a written reprimand against employee David Six,[4] public apologies to Wathen, and a finding of no basis for disciplinary action against Nyzio or Murphy. Plaintiff admits that there were no further instances of sexual harassment after she reported her claims to GE.

On June 8, 1994, while still employed by GE, Wathen filed suit in state court against her employer and the three individuals—Carl Murphy, Jim Kerian, and Walt Nyzio—in their official and individual capacities, alleging sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17, and the Kentucky Civil Rights Act, KY.REV.STAT. ANN. §§ 344.010 to 344.500 ("KRS Chapter 344"), and state law claims for the tort of "outrage" and breach of contract. The defendants timely removed the action to the United States District Court.

Each of the defendants moved for summary judgment, and the district court granted those motions. The court first held that Title VII does not impose liability on individual employees. Alternatively, the court held that the individual employees could not be held liable because "the frequency and severity of the conduct alleged by plaintiff against the individuals is insufficient as a matter of law to support her cause of action." With respect to GE's motion for summary judgment, the district court held that the employer responded adequately and effectively once it had notice of the individual defendants' actions, and therefore was insulated from liability. In rejecting Wathen's state law tort claim for outrageous conduct, the court concluded that Wathen failed to produce evidence which would allow any reasonable jury

to find that any of the employees' conduct was "atrocious and utterly intolerable." Finally, the court dismissed Wathen's breach of contract claim, finding that GE's clear disclaimer stating that the manual is not to be considered a contract of employment defeats the breach of contract claim. Wathen now appeals.

## II. DISCUSSION

### A. Standard of Review

We review *de novo* the grant of summary judgment, using the same standard applied by the district court. *Terry Barr Sales Agency, Inc. v. All–Lock Co.*, 96 F.3d 174, 178 (6th Cir.1996). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In assessing the record to determine whether there is any genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248, 106 S.Ct. at 2510. With these familiar principles in mind, we turn to Wathen's claims on appeal.

### B. Individual Liability

■ Wathen claims and, for purposes of this appeal, we assume that Murphy, Nyzio and Kerian were employed in supervisory positions and were thus the agents of GE. She therefore sued each of them in his individual capacity for the alleged violations of Title VII and KRS Chapter 344.[5] The dis-

---

3. Kerian's May 6, 1994, letter of termination was not effective until the completion of the glass furnace rebuild on or about September 1, 1994.

4. Although David Six was named as a defendant in this action, on June 29, 1994, the district court granted defendant Six's Motion to Dismiss.

Wathen does not challenge the district court's order with respect to Six in the instant appeal.

5. Like Title VII, KRS Chapter 344 proscribes certain unlawful employment practices. Indeed, the general purpose of the Kentucky Act is to provide a means for implementing within the state the policies embodied in Title VII, as well

trict court concluded that no individual liability lies under Title VII. The district court reasoned that individual liability is inconsistent both with the original remedial provision of Title VII, which provided for reinstatement and back pay, and with the 1991 amendments to Title VII, which added monetary damages with limits depending upon employer size. The district court, therefore, concluded that Congress did not intend to subject non-employers to liability for damages.

A majority of our sister circuits that have addressed this issue have held that an employee/supervisor, who does not otherwise qualify as an "employer," cannot be held individually liable under Title VII and similar statutory schemes.[6] *See Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2d Cir.1995) (holding that "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII"); *E.E.O.C. v. AIC Security Investigations, Ltd.,* 55 F.3d 1276, 1282 (7th Cir.1995) (holding that "individuals who do not otherwise meet the statutory definition of 'employer' cannot be held liable under the ADA"); *Lenhardt v. Basic Institute of Tech. Inc.,* 55 F.3d 377, 381 (8th Cir.1995) (finding that supervisors and managers are not subject to individual liability);

*Gary v. Long,* 59 F.3d 1391, 1399 (D.C.Cir.), *cert. denied,* (1995) (holding that Title VII does not impose individual liability on supervisory employees); *Smith v. Lomax,* 45 F.3d 402, 403 (11th Cir.1995) (recognizing that employees cannot be held liable under the ADEA or Title VII); *Grant v. Lone Star Co.,* 21 F.3d 649, 653 (5th Cir.1994) (holding that Title VII does not permit imposition of liability upon an individual unless they meet Title VII's definition of employer); *Miller v. Maxwell's Intern. Inc.,* 991 F.2d 583, 588 (9th Cir.1993) (holding that individuals cannot be held liable for damages under Title VII and ADEA); *Sauers v. Salt Lake County,* 1 F.3d 1122, 1125 (10th Cir.1993) (holding that under Title VII, suits must proceed against individuals in their official capacities only; individual capacity suits are inappropriate). *But see Paroline v. Unisys Corp.,* 879 F.2d 100, 104 (4th Cir.1989) (finding that a supervisory employee was an "employer" individually liable under Title VII), *vacated in part on other grounds,* 900 F.2d 27 (4th Cir.1990).

Similarly, the majority of the district courts within the Sixth Circuit that have addressed the issue have also rejected the concept of individual liability under Title VII.[7] We have not squarely addressed this

---

as other related federal statutes. KRS Chapter 344.020(1). Hence, it is common practice to look to the federal counterpart in construing KRS Chapter 344. *See Palmer v. International Ass'n of Machinists,* 882 S.W.2d 117, 119 (Ky. 1994) (noting that KRS Chapter 344 was modeled after the federal statute, Title VII of the Civil Rights Act of 1964). Since the Kentucky courts have not addressed the issue presented by this appeal, we must look to federal law under Title VII to determine whether the individual defendants may be held liable in their individual capacity under KRS Chapter 344. We, therefore, conclude that the substantive legal analysis for the present claims brought under Title VII and the Kentucky Civil Rights Act is identical. *See, e.g., White v. Rainbo Baking Co.,* 765 S.W.2d 26, 28 (Ky.Ct.App.1988).

**6.** The issue of an employee/supervisor's individual liability has been raised not only within the context of Title VII but also in its close counterparts, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, and the American with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12117. The liability schemes under Title VII, the ADEA, and the ADA are essentially the same in aspects relevant to this issue; they

limit liability to the employer and use the term "agent" in defining employer. *See* 42 U.S.C. §§ 2000e–5(b), 2000e(b) (Title VII); 29 U.S.C. §§ 626(b), 630(b) (ADEA); 42 U.S.C. §§ 12112(a), 12111(5)(A)(ADA). Because Title VII, the ADEA, and the ADA define "employer" essentially the same way, an analysis based on Title VII, the ADEA, and the ADA case law is appropriate. *See E.E.O.C. v. AIC Security Investigations, Ltd.,* 55 F.3d 1276, 1279–80 (7th Cir. 1995). Hence, we refer to and rely on case law under Title VII, ADEA, and the ADA throughout our opinion.

**7.** *See, e.g., Lococo v. Barger,* 958 F.Supp. 290, 294–95 (E.D.Ky.1997) (holding that Title VII does not give rise to individual liability of an agent/supervisor of the employer); *Burnett v. Tyco Corp.,* 932 F.Supp. 1039, 1043 (W.D.Tenn. 1996) (finding that neither Title VII nor the Tennessee Human Rights Act allows employees or supervisors to be sued as individuals); *Czupih v. Card Pak Inc.,* 916 F.Supp. 687, 690 (N.D.Ohio 1996) (following the majority of the courts in this country which have held that individual defendants with supervisory control may not be held personally liable under Title VII); *Frizzell v. Southwest Motor Freight, Inc.,* 906 F.Supp. 441,

issue before.[8] We now hold that an individual employee/supervisor, who does not otherwise qualify as an "employer," may not be held personally liable under Title VII. Because KRS Chapter 344 mirrors Title VII, we find our holding equally applicable to KRS Chapter 344.

### 1. *The Language of Title VII*

Title VII provides that "it shall be an unlawful employment practice for an employer" to discriminate on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a). A person aggrieved by such discrimination may bring a civil action against the "employer." 42 U.S.C. § 2000e–5(b). "Employer" is defined to mean "a person engaged in an industry affecting commerce who has fifteen or more employees ... *and any agent of such person.*" 42 U.S.C. § 2000e(b) (emphasis added). "Agent" is not defined by Title VII but has been interpreted as "an individual who 'serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment.'" *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 803 (6th Cir.1994) (quoting *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir.1993)).

■■■ Wathen argues that the use of the term "agent" in the statute allows her to sue defendants Murphy, Nyzio and Kerian in their individual capacities as agents of GE. She contends that by its plain terms, the language of the statute imposes liability on individuals for their violations of Title VII.

We concede that "a narrow, literal reading of the agent clause in § 2000e(b) does imply that an employer's agent is a statutory employer for purposes of liability." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1314 (2d Cir. 1995). However, it is well-settled that "in expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987) (citations and internal quotations omitted). This is particularly significant where, as in the present case, the narrow and literal reading of the statute will produce a result clearly at odds with the express intent of Congress. *Accord Tomka*, 66 F.3d at 1314 (recognizing that the agent clause found in § 2000e(b) presents the rare case in which the literal application of the statute will produce a result demonstrably at odds with the intentions of its drafters); *Gary v. Long*, 59 F.3d 1391, 1399 (D.C.Cir.), *cert. denied*, (1995) (rejecting plain language argument). *E.E.O.C. v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1281–82 (7th Cir.1995) (same); *Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 587 (same). An examination of the statutory scheme and remedial provisions of Title VII, convinces us that Congress did not intend to provide for individual employee/supervisor liability under Title VII.

### 2. *Statutory Scheme and Remedial Provisions*

The majority of courts addressing this issue have concluded that "[t]he obvious pur-

---

449 (E.D.Tenn.1995) (analyzing authorities under Title VII in determining that an employee/supervisor cannot be individually liable under the Tennessee law); *Lowry v. Clark*, 843 F.Supp. 228, 231 (E.D.Ky.1994) (finding no individual liability under Title VII). *But see Kramer v. Windsor Park Nursing Home, Inc.*, 943 F.Supp. 844, 849–50 (S.D.Ohio 1996) (recognizing that the majority of circuits disagree, but nonetheless adhering to the view that Title VII provides for individual supervisor liability); *Johnson v. University Surgical Group Assocs. of Cincinnati*, 871 F.Supp. 979, 986 (S.D.Ohio 1994) (holding that a "co-employee supervisor is personally and individually liable under Title VII for his or her own personal and individual acts of intentional discrimination").

**8.** At least two of our district courts, *Kramer*, 943 F.Supp. at 850 and *Johnson*, 871 F.Supp. at 986,

have cited to our decision in *Jones v. Continental Corp.*, 789 F.2d 1225, 1231 (6th Cir.1986) (stating in dicta "the law is clear that individuals may be held liable for violations of Section 1981, ... and as 'agents' of an employer under Title VII"), as indicating our approval of personal liability of a co-employee supervisor. We find the district courts' reliance on *Jones* misplaced. In *Jones*, the issue was whether, for the purpose of assessing attorneys fees under 28 U.S.C. § 1927, it was "unreasonable and vexatious" to sue an individual defendant under Title VII. 789 F.2d at 1231. Our statement that individuals may be held liable as "agents" of the employer, and therefore, the individuals were properly sued, *id.*, merely recognized that an employee may be liable as a representative/agent of the employer; it did not address the issue of whether under Title VII an individual may be personally liable.

pose of this agent provision was to incorporate respondeat superior liability into the statute." *Miller,* 991 F.2d at 587 (internal quotation marks omitted). *See also Gary,* 59 F.3d at 1399; *AIC Security,* 55 F.3d at 1281; *Grant v. Lone Star Co.,* 21 F.3d 649 (5th Cir.1994). This common interpretation of the scope of the agent clause in Title VII finds support in the Supreme Court's discussion in *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 72, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986), wherein the Court stated that "Congress' [sic] decision to define 'employer' to include any 'agent' of an employer ... surely evinces an intent to place some limits on the acts of the employees for which employers under Title VII are to be held responsible." *Id.* at 72, 106 S.Ct. at 2408. Notably, while the Supreme Court found that Congress's purpose in including "agent" in the definition of employer was to define the scope of liability of the employer, it said nothing about any liability on the part of the employee/agent.

Moreover, the statutory scheme itself indicates that Congress did not intend to impose individual liability on employees. Title VII limits liability to employers with fifteen or more employees, 42 U.S.C. § 2000e(b), "in part because Congress did not want to burden small entities with the costs associated with litigating discrimination claims." [9] *Miller,* 991 F.2d at 587. We agree with the Second Circuit's conclusion that it is " 'inconceivable' that a Congress concerned with protecting small employers would simultaneously allow civil liability to run against individual employees." *Tomka,* 66 F.3d at 1314 (citing with approval *Miller,* 991 F.2d at 587). Additionally, as the Second Circuit noted, the legislative history indicates that in the floor debates over § 2000e(b), no mention was made of agent liability, further "implying that Congress did not contemplate agent liability under Title VII." 66 F.3d at 1314.

Finally, we find that Title VII's remedial provisions are incompatible with the imposition of liability on individual employees for violations of the Act. Before Congress enacted the Civil Rights Act of 1991, 42 U.S.C. § 1981a ("CRA of 1991"), a successful Title VII plaintiff was limited to reinstatement and back pay—remedies available only from an employer. *See Tomka,* 66 F.3d at 1314; *AIC Security,* 55 F.3d at 1281. This limitation on the available remedies suggests that Congress did not intend to allow recoveries against individual employees under Title VII prior to its 1991 amendment. When Congress enacted the CRA of 1991, it added compensatory and punitive damages for intentional discrimination under Title VII. However, Congress calibrated the amounts of compensatory and punitive damages recoverable to the size of the employer, beginning with employers having at least fifteen employees. *See* 42 U.S.C. § 1981a.[10] The statute contains no provision for damages to be paid by individuals, further evidencing a lack of congressional intent to hold individuals liable. "[I]f Congress had envisioned individual liability ... it would have included individuals in this litany of [calibrated] limitations and would have discontinued the exemption for small employers...." *Miller,* 991 F.2d at 588 n. 2. *See also Tomka,* 66 F.3d at 1315.

In sum, we find that the statute as a whole, the legislative history and the case law support the conclusion that Congress did not intend individuals to face liability under the definition of "employer" it selected for Title VII. Accordingly, summary judgment in favor of the defendants Murphy, Nyzio and Kerian in their individual capacities under Title VII and KRS Chapter 344 is affirmed.

**C. Liability Of Employer GE**

■ Wathen next claims that GE is liable under Title VII and Kentucky law for the

---

9. As noted in *Tomka,* 66 F.3d at 1314, Congress considered other factors in enacting § 2000e(b), including potential effects on competition and the economy and the constitutionality of Title VII under the Commerce Clause. *See, e.g.,* 110 Cong. Rec. 7088 (1964) (Remarks of Sen. Stennis); 110 Cong. Rec. S. 7207–17 (Remarks of Sen. Clark).

10. The 1991 law allows a maximum of $50,000 in damages against respondents with 15 to 100 employees, $100,000 in damages against respondents with 101 to 200 employees, $200,000 in damages against respondents with 201 to 500 employees and $300,000 in damages against respondents with more than 500 employees. 42 U.S.C. § 1981a(b)(3).

conduct of its agents, employees Murphy, Nyzio and Kerian. The district court found that GE was relieved from liability as a matter of law because GE implemented and enforced policies explicitly prohibiting sexual harassment, and upon Wathen's filing of her complaint with GE, the company took prompt and remedial action. We agree.

In *Kauffman v. Allied Signal, Inc.*, 970 F.2d 178, 184 (6th Cir.1992), this court held that "agency liability is not strict and can be negated if the employer responds adequately and effectively once it has notice of the actions." *See also Vinson*, 477 U.S. at 72, 106 S.Ct. at 2408. We held that the employer in that case was not liable even though the plaintiff was unaware of the employer's sexual harassment policy, and the employer had neither established guidelines for dealing with sexual harassment claims, nor done any sexual harassment training of its employees.

> Whatever one may think about the adequacy of [the employer's] sexual harassment policy ex ante, it worked and was adequate in this situation. [The employer] immediately fired the offending supervisor to correct the hostile working environment which he created.

*Kauffman*, 970 F.2d at 185.

*Kauffman* is dispositive of this case. Wathen admits that there were no incidents of sexual harassment after she made her complaint in March 1994. GE's response put an end to the behavior of which she complained. Moreover, unlike the situation in *Kauffman*, GE implemented and enforced policies explicitly prohibiting sexual harassment in the workplace and procedures designed to deal with violations of those policies. Wathen and other staff members were trained under these policies and were instructed to report suspected policy violations through any one of a number of different channels. Wathen admits that she failed to report any of the conduct alleged until four months after its occurrence. Once Wathen reported her complaint to GE, GE made a thorough investigation of the claims and took prompt and adequate action, which included the termination of Kerian, severe discipline of another employee, and public apologies to

Wathen. The district court properly granted summary judgment in favor of GE.

**D. Tort of Outrageous Conduct**

■ With respect to Wathen's claims of outrageous conduct against the individual defendants, the district court found that the plaintiff failed to produce evidence which would allow any reasonable jury to find that the conduct alleged by the plaintiff was "atrocious and utterly intolerable," as required by Kentucky law. We agree.

In *Humana v. Seitz*, 796 S.W.2d 1, 4 (Ky. 1990), the Kentucky Supreme Court held that in order to prove outrageous conduct, the plaintiff must show that the defendant's conduct "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 3 (quoting RESTATEMENT (SECOND) OF TORTS § 46, comment d); *see also Pierce v. Commonwealth Life Ins. Co.*, 825 F.Supp. 783 (E.D.Ky.1993), *aff'd*, 40 F.3d 796 (6th Cir. 1994); *Kroger Co. v. Willgruber*, 920 S.W.2d 61, 65 (Ky.1996) (emphasizing that Kentucky still takes a restrictive/limited approach to the tort of outrageous conduct, which covers "only outrageous and intolerable conduct").

Applying Kentucky's very restrictive standard, we conclude that the district court properly granted summary judgment on this claim. The conduct of which Wathen complains, while crude and wholly inappropriate, does not rise to the level of the "atrocious and utterly intolerable" as a matter of law.

**E. Breach of Contract Claim**

■ Finally, Wathen claims that GE's *Integrity* manual constitutes a contract between herself and GE. Specifically, she claims that the "making of unwelcome sexual advances to another employee, or any other conduct with sexual overtones, is prohibited behavior as set forth in said [*Integrity* ] Manual," and GE, through the conduct of the individual defendants as well as through its own conduct, has breached that contract.

■ The *Integrity* manual contains a clear and specific disclaimer, stating that "[t]hese

policies are not an employment contract. GE does not create any contractual rights by issuing these policies." Under Kentucky law, a clear disclaimer defeats an employee's breach of contract claim. *See, e.g., Nork v. Fetter Printing Co.,* 738 S.W.2d 824, 827 (Ky.Ct.App.1987). The district court correctly granted summary judgment on the plaintiff's contract claim.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is in all respects **AFFIRMED**.