Hoekstra, J.
 

 In these consolidated appeals stemming from plaintiffs sexual harassment action against her employers and her supervisor, plaintiff appeals as of right the trial court’s grant of summary disposition in favor of defendant Nationwide Truck Brokers, Inc. (ntb), and defendant James Wilkerson (Docket No. 226007), and the trial court’s grant of case evaluation sanctions to those defendants (Docket No. 228672). We affirm.
 

 I. FACTS AND PROCEDURAL HISTORY
 

 Plaintiff was employed with defendants Designed Administrative Resources and Technologies, Inc. (dart), and Simplified Employment Services, Inc.
 
 *468
 
 (ses).
 
 [1]
 
 Through an employee lease agreement, plaintiff worked for ntb under the supervision of Wilkerson as a log entry clerk in ntb’s safety department. According to plaintiff, in August 1996, Wilkerson began making unwanted sexual advances toward her, including sending her sexually explicit electronic mail “pop up” messages, repeatedly asking her to go out with him, and telling her that she “smelled” good. Further, Wilkerson allegedly grabbed her breasts and buttocks, put his face close to her breasts, pulled her skirt up over her waist, ran a toy golf club up the slit of her skirt, presented her with a gift of lingerie, and made sexually explicit remarks to her.
 

 Plaintiff testified at a deposition that she told certain employees of ntb about Wilkerson’s conduct, including Dave Wojtaszek and Mark Doyle, and talked to Dave Birge about possibly transferring to his department. On February 17, 1997, plaintiff left work at NTB. Thereafter, plaintiff contacted an attorney, who sent a letter on that same date to Henry Schwarz, the president of ntb, notifying NTB of the harassment. Plaintiff was given paid leave, as she requested, and Wilkerson was placed on suspension pending the outcome of an investigation.
 

 Ntb, dart, and ses conducted an investigation and were unable to substantiate plaintiff’s allegations of harassment. Thereafter, ntb invited plaintiff to return to work at ntb, but indicated that plaintiff would not have any contact with Wilkerson, either directly or
 
 *469
 
 indirectly. Similarly, dart and ses offered to assist plaintiff with finding a new job assignment if she preferred not to return to NTB. Plaintiff declined both offers.
 

 On June 8, 1998, plaintiff filed a complaint against NTB, DART, SES, and Wilkerson, alleging two counts of discrimination in violation of Michigan’s Civil Rights Act (CRA), MCL 37.2101
 
 et seq.
 
 The only count at issue on appeal is plaintiff’s claim of “sexual discrimination and harassment.”
 
 [2]
 
 Defendants answered the complaint, and Wilkerson also filed a counterclaim alleging slander and intentional infliction of emotional distress.
 
 [3]
 
 Discovery ensued and in September 1999, NTB and Wilkerson moved for summary disposition under MCR 2.116(C)(10). These defendants argued, in essence, that plaintiff could not demonstrate quid pro quo sexual harassment because defendants took no adverse employment action against plaintiff and that plaintiff could not demonstrate a hostile work environment because she had not properly notified ntb of the harassment. In response, plaintiff claimed she was subjected to severe and pervasive harassment and that notice had been given to defendant ntb because plaintiff told ntb employees Dave Wojtaszek, Mark Doyle, and Al Szukala about the harassment.
 

 After a hearing on the motion, on February 4, 2000, the trial court granted summary disposition in favor of ntb and Wilkerson and dismissed the sexual har
 
 *470
 
 assment count of plaintiffs complaint. The trial court noted that under the quid pro quo theory of sexual harassment, plaintiff had not demonstrated that any adverse job action was taken against her. The trial court also rejected plaintiffs hostile environment sexual harassment clafitt because ntb was not notified of the sexual harassment until ntb received the letter from plaintiffs attorney and thereafter ntb suspended Wilkerson, provided plaintiff with paid leave, and conducted a prompt investigation. Further, the trial court explained that plaintiff provided no authority for the proposition that an individual employee could be held liable for sexual harassment where the employer had been dismissed.
 

 In another order relevant to this appeal, the trial court denied plaintiff’s oral motion to amend the complaint to add an assault and battery count against Wilkerson. Further, ntb and Wilkerson moved for case evaluation sanctions in accordance with MCR 2.403(0), which the trial court awarded, albeit in an amount less than requested.
 

 H. SUMMARY DISPOSITION OF PLAINTIFF’S SEXUAL HARASSMENT CLAIMS AGAINST NTB
 

 On appeal, plaintiff first argues that the trial court erred in granting summary disposition pursuant to MCR 2.116(C)(10) in favor of ntb under two separate theories of liability, quid pro quo sexual harassment and hostile environment sexual harassment. Plaintiff claims that she produced sufficient evidence to create a question of fact and, thus, that her sexual harassment claims under these theories should have gone to a jury. We review de novo a trial court’s grant of sum
 
 *471
 
 mary disposition.
 
 Spiek v Dep’t of Transportation,
 
 456 Mich 331, 337; 572 NW2d 201 (1998).
 

 A motion pursuant to MCR 2.116(C)(10) tests the factual sufficiency of the claim.
 
 Maiden v Rozwood,
 
 461 Mich 109, 120; 597 NW2d 817 (1999). “When reviewing a motion for summary disposition brought under MCR 2.116(C)(10), the trial court must consider the affidavits, pleadings, depositions, admissions, and documentary evidence submitted by the parties in the light most favorable to the party opposing the motion.”
 
 Meyer v Center Line,
 
 242 Mich App 560, 574; 619 NW2d 182 (2000). Summary disposition is appropriate where the proffered evidence fails to establish a genuine issue of material fact.
 
 Maiden, supra; Smith v Globe Life Ins Co,
 
 460 Mich 446, 455-456, n 2; 597 NW2d 28 (1999).
 

 The CRA prohibits an employer from, among other things, discriminating because of sex, which includes sexual harassment.
 
 [4]
 
 MCL 37.2202(1); MCL 37.2103(i);
 
 Chambers v Trettco, Inc (On Remand),
 
 244 Mich App 614, 617; 624 NW2d 543 (2001). Section 103(i) of the act, MCL 37.2103(i), defines sexual harassment:
 

 Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:
 

 (i) Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment....
 

 
 *472
 
 (ii) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual’s employment....
 

 (iii) The conduct or communication has the purpose or effect of substantially interfering with an individual’s employment ... or creating an intimidating, hostile, or offensive employment. . . environment.
 

 When sexual harassment falls under one of the first two subsections, it is commonly labeled quid pro quo harassment, and when it falls under the third subsection, it is commonly labeled hostile environment harassment.
 
 Chambers v Trettco, Inc,
 
 463 Mich 297, 310; 614 NW2d 910 (2000).
 

 With regard to each of these two categories of sexual harassment, our Supreme Court has identified the elements that a plaintiff must establish to make out a claim.
 
 Id.
 
 Quoting its previous decisions in
 
 Champion v Nation Wide Security, Inc,
 
 450 Mich 702; 545 NW2d 596 (1996), and
 
 Radtke v Everett,
 
 442 Mich 368; 501 NW2d 155 (1993), our Supreme Court explained:
 

 In order to establish a claim of quid pro quo harassment, an employee must, by a preponderance of the evidence, demonstrate:
 

 “(1) that she was subject to any of the types of unwelcome sexual conduct or communication described in the statute, and (2) that her employer or the employer’s agent used her submission to or rejection of the proscribed conduct as a factor in a decision affecting her employment.
 
 [Champion, supra
 
 at 708-709.]”
 

 In order to establish a claim of hostile environment harassment, an employee must prove the following elements by a preponderance of the evidence:
 

 “(1) the employee belonged to a protected group;
 

 “(2) the employee was subjected to communication or conduct on the basis of sex;
 

 
 *473
 
 “(3) the employee was subjected to unwelcome sexual conduct or communication;
 

 “(4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee’s employment or created an intimidating, hostile, or offensive work environment; and
 

 “(5) respondeat superior.
 
 [Radtke, supra
 
 at 382-383.]”
 
 [Chambers, supra,
 
 463 Mich 310-311.]
 

 However, when hostile environment harassment is committed by an agent of the employer, an employer may avoid liability if it adequately investigated and took prompt and appropriate remedial action upon notice of the alleged harassment.
 
 Chambers, supra,
 
 463 Mich 312. “The bottom line is that, in cases involving a hostile work environment claim, a plaintiff must show some
 
 fault
 
 on the part of the employer.”
 
 Id.
 
 “An employer, of course, must have notice of alleged harassment before being held liable for not implementing action.”
 
 Radtke, supra
 
 at 396-397. When considering whether the employer was provided adequate notice, courts must apply an objective standard.
 
 Chambers, supra,
 
 463 Mich 319 (“notice of sexual harassment is adequate if, by an objective standard, the totality of the circumstances were such that a reasonable employer would have been aware of a substantial probability that sexual harassment was occurring”).
 

 A. QUID PRO QUO HARASSMENT
 

 We first address plaintiff’s claim of quid pro quo harassment and conclude that plaintiff satisfied only the first of the two elements. Viewing the evidence in a light most favorable to plaintiff, plaintiff did present evidence that created a genuine issue of material fact
 
 *474
 
 concerning whether she was subjected to unwelcome sexual conduct and communication. Plaintiff presented evidence that Wilkerson made sexually explicit comments to her and made inappropriate sexual contact with her. However, plaintiff must also present evidence that her submission to or rejection of the sexual advances was used as a factor in a decision affecting her employment.
 
 Chambers, supra,
 
 463 Mich 310.
 

 Here, plaintiff offers no evidence of a decision affecting her employment made by Wilkerson that related to her submission to or rejection of his sexual advances. Rather, on appeal, she argues that she was constructively discharged because her efforts to alert someone to the harassment appeared to be futile, she felt hopeless, she thought she needed outside help, she felt humiliated after ntb conducted its investigation but found her charges unsubstantiated, and she was dissatisfied with ntb’s request that she return to work under a different supervisor or seek reassignment through DART and SES, while Wilkerson returned to his job. While we acknowledge that under certain circumstances a constructive discharge can be an adverse employment action resulting from submission to or rejection of sexual advances, see
 
 Champion, supra
 
 at 710-713, plaintiff has not shown that connection in this case.
 
 Chambers, supra
 
 463 Mich 317. In other words, the events on which plaintiff bases her quid pro quo harassment claim do not constitute an adverse employment action resulting from her submission to or rejection of Wilkerson’s sexual advances. Thus, the trial court properly granted summary disposition to ntb on plaintiff’s claim of sexual harassment under the quid pro quo theory.
 

 
 *475
 
 B. HOSTILE ENVIRONMENT HARASSMENT
 

 With regard to plaintiffs claim of hostile environment harassment, the parties focus on the fifth element, respondeat superior, which is necessary for plaintiff to demonstrate a prima facie case of hostile work environment.
 
 Radtke, supra
 
 at 382-383. Again, an employer “must have notice of alleged harassment before being held liable for not implementing action.”
 
 Id.
 
 at 396-397. Plaintiff argues that she notified defendant ntb of the sexual harassment by informing Dave Wojtaszek, Dave Birge, Mark Doyle, and Wilkerson of the harassment.
 

 The parties agree that plaintiff told Wojtaszek, a service manager at ntb who supervised the mechanics, about the harassment. However, they disagree concerning whether telling Wojtaszek constitutes informing NTB of the harassment. A plaintiff must demonstrate that the employer knew of the harassment, which can be shown by evidence that a complaint was made to higher management or that the employer should have known about the harassment because of its pervasiveness.
 
 Sheridan v Forest Hills Public Schools,
 
 247 Mich App 611, 621; 637 NW2d 536 (2001);
 
 Hartleip v McNeilab, Inc,
 
 83 F3d 767, 776-777 (CA 6, 1996). This Court has defined higher management as “someone in the employer’s chain of command who possesses the ability to exercise significant influence in the decision-making process of hiring, firing, and disciplining the offensive employee.”
 
 Sheridan, supra
 
 at 622. According to the evidence presented here, Wojtaszek had no authority over Wilkerson. Notifying an employee who is not plaintiff’s supervisor or higher management is insufficient to
 
 *476
 
 provide notice to the employer. See
 
 id.
 
 at 622-623 (by defining “higher management,” this Court identified management employees who have actual authority to effectuate change in the workplace and they are the employees whose knowledge may fairly be imputed to the employer). Further, there is no indication in the record that plaintiff told Wojtaszek of the harassment for the purpose of informing ntb of the harassment and getting the harassment to stop.
 
 [5]
 

 Further, plaintiff has failed to show that she notified Birge, the director of transportation at ntb, of the harassment, or that notice to him constituted notice to the employer. Birge admitted that plaintiff asked him if she could transfer to a position in his department; however, Birge did not recall when plaintiff made this request, and plaintiff did not tell Birge that she wanted to transfer because Wilkerson was harassing her. And plaintiff stated only that she told Birge that she “wanted to make a change” and that “she worked harder than [Wilkerson].” Plaintiff has not cited any place in the record, nor are we aware of one, that indicates that plaintiff requested the transfer because she was being harassed by Wilkerson.
 

 With respect to plaintiffs notification to Doyle, the human resource coordinator, Doyle acknowledged learning about the alleged harassment from plaintiff, but that was not until the Thursday before plaintiff left work at ntb on Monday, February 17, 1997. On that Monday, plaintiffs attorney notified ntb’s president of the alleged harassment, and thereafter ntb immediately began its investigation, suspended Wil
 
 *477
 
 kerson, and placed plaintiff on paid leave. Thus, even if plaintiff’s conversation with Doyle constituted notice to the employer, the evidence demonstrates that ntb took prompt action to investigate the allegations and provided appropriate remedial action relative to the time that Doyle was informed of the alleged harassment.
 
 Radtke, supra.
 

 Plaintiff also argues that her threats to Wilkerson to stop the harassment put defendant NTB on notice that she was being harassed. To the contrary, we note that telling only the harasser ensures that higher management in the company will not learn of the harassment because it is in the best interests of the harasser to conceal such information. Nor do plaintiff’s threats to Wilkerson constitute notice to higher management.
 
 Sheridan, supra.
 

 Further, to the extent that plaintiff intended to argue that NTB had constructive knowledge of the harassment, see
 
 Sheridan, supra
 
 at 621, 627, plaintiff has failed to demonstrate that the harassment was so pervasive that ntb should have been alerted to the possibility that plaintiff was being harassed. In fact, the letter from plaintiff’s attorney to ntb appears to concede that plaintiff had not put ntb on notice that she was being harassed before she left ntb and the letter itself was meant to put ntb on notice of the alleged sexual harassment. Under these circumstances, the trial court properly granted summary disposition to ntb.
 
 [6]
 

 
 *478
 
 IE PLAINTIFF’S CLAIM OF INDIVIDUAL LIABILITY UNDER THE CRA
 

 Plaintiff next argues that the trial court erred in finding that the individual defendant, Wilkerson, could not be held liable under the cra after the corporate defendants were dismissed. According to plaintiff, the cra provides for individual liability and Michigan case law supports that interpretation. Thus, the question before us is whether Wilkerson, who is employed in a supervisory capacity, can be held individually liable, separate from his employer, for actions toward an employee under his supervision that violate the prohibition of the cra against sexual harassment. We hold that he cannot.
 

 Our consideration of whether the cra provides for individual liability begins with this Court’s decision in
 
 Jenkins v Southeastern Michigan Chapter, American Red Cross,
 
 141 Mich App 785; 369 NW2d 223 (1985). There, the plaintiff alleged race discrimination in violation of the CRA against his former employer and two of its employees. On appeal, this Court addressed whether the trial court erred in failing to dismiss the individual defendants and found that the trial court did not err in denying a directed verdict with respect to the two individuals’ claim that they were not employers within the meaning of MCL 37.2201(a). Because the two individual defendants “were responsible for making personnel decisions affecting plaintiff, and were agents within the meaning of § 201(a),” this Court held that they could be found liable under the CRA. This Court stated that its decision was controlled by a federal district court decision,
 
 Munford v James T Barnes & Co,
 
 441 F Supp 459 (ED Mich, 1977). Further, the
 
 Jenkins
 
 Court stated, without
 
 *479
 
 elaboration, that it “has examined defendants’ attempts to distinguish
 
 Munford
 
 and policy arguments against application of
 
 Munford
 
 in the present case, and finds them to be without merit.”
 
 Jenkins, supra
 
 at 800.
 

 In
 
 Munford,
 
 the plaintiff alleged, in part, employment discrimination in violation of title vn of the federal Civil Rights Act of 1964 on the basis that her employer discharged her because she refused to engage in sexual relations with her supervisor.
 
 Mun-ford, supra
 
 at 460. The
 
 Munford
 
 court determined that under the definition of employer of title vn, two individual defendants, who admittedly had responsibility for making personnel decisions for the employer, would be considered agents of the company and thus were within the statutory definition of employer.
 
 Id.
 
 at 466. The
 
 Munford
 
 court concluded that, for purposes of the defendants’ motion for summary judgment, the plaintiff had stated a cause of action under title vn against all three defendants, i.e., the employer and the two individual employees.
 
 Id.
 

 Subsequently, the Sixth Circuit Court of Appeals addressed this issue in a later decision,
 
 Wathen v General Electric Co,
 
 115 F3d 400, 403-406 (CA 6, 1997), and implicitly overruled
 
 Munford.
 
 In
 
 Wathen,
 
 the plaintiff appealed the district court’s grant of summary judgment for her former employer and three former employees in her cause of action alleging sexual harassment.
 
 Id.
 
 at 401. The plaintiff claimed, in part, that the individual defendants were employed in supervisory positions and thus were agents of the employer, and she sued them in their individual capacities for, in part, alleged violation of title vn.
 
 Id.
 
 at 403. The plaintiff argued that the use of the term
 
 *480
 
 “agent” in title vn allows for suits against the individual defendants in their individual capacities as agents for the employer.
 
 Id.
 
 at 405. However, the court noted that the reference to “agent” in the definition of “employer” was to create respondeat superior liability.
 
 Id.
 
 Considering the language of title vn, congressional intent, the statutory scheme, and remedial provisions, the court held that “an individual employee/ supervisor, who does not otherwise qualify as an ‘employer,’ may not be held personally liable under Title vn.”
 
 Id.
 
 The court found that “the statute as a whole, the legislative history and the case law support the conclusion that Congress did not intend individuals to face liability under the definition of ‘employer’ it selected for Title vn.”
 
 Id.
 
 at 406. Thus, the decision of the Sixth Circuit Court of Appeals in
 
 Wathen
 
 effectively rejected the holding in
 
 Munford.
 
 Furthermore,
 
 Wathen
 
 expresses the prevailing view in the majority of federal courts.
 
 [7]
 

 
 *481
 
 We further note that at least two decisions from federal district courts in Michigan,
 
 Hall v State Farm Ins Co,
 
 18 F Supp 2d 751 (ED Mich, 1998), and
 
 Comiskey v Automotive Industry Action Group,
 
 40 F Supp 2d 877, 891 (ED Mich, 1999), have considered whether Michigan’s cra provides for individual liability and, following
 
 Jenkins,
 
 determined that it does.*
 
 [8]
 
 These cases acknowledge that federal district courts are bound by decisions of Michigan’s intermediate appellate courts unless convinced that the Michigan Supreme Court would decide the question differently.
 
 Id.; Hall, supra
 
 at 763. When stating that it was not convinced “that the Michigan Supreme Court would construe the Michigan statute as limited by
 
 Wathen,”
 
 the
 
 Comiskey
 
 court further noted that if Michigan’s cra “is to be limited, that matter is best addressed by Michigan courts and the Michigan legislature.”
 
 Comiskey, supra
 
 at 891.
 

 To summarize, this Court in
 
 Jenkins
 
 held that individual liability exists under Michigan’s cra. However, the
 
 Jenkins
 
 Court stated that its decision was controlled by a federal district court case,
 
 Munford,
 
 that has been implicitly overruled and does not reflect the majority interpretation of title vn. Further, the
 
 Jenkins
 
 Court indicated that policy arguments against
 
 *482
 
 the application of
 
 Munford
 
 were without merit; however, it did not identify the policy arguments made or provide its reasoning, and thus this analysis is unhelpful to us here. Despite these circumstances, at least two federal district courts have followed
 
 Jenkins.
 
 In this context, we decline to follow
 
 Jenkins
 
 because we are not bound by it, MCR 7.215(I)(1),
 
 [9]
 
 because it relied on a case that was not controlling
 
 [10]
 
 and that since has been implicitly overruled
 
 [11]
 
 and because we find its reasoning unpersuasive. Rather, we undertake to consider the statutory language of the cra and determine if the intent of the statute was to make individuals liable for violations of the act.
 

 When considering the statutory language, we abide by the well-established rules of statutory construction:
 

 An anchoring rule of jurisprudence, and the foremost rule of statutory construction, is that courts are to effect the intent of the Legislature. To do so, we begin with an examination of the language of the statute. If the statute’s language is clear and unambiguous, then we assume that the Legislature intended its plain meaning and the statute is enforced as written. A necessary corollary of these principles is that a court may read nothing into an unambiguous
 
 *483
 
 statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself.
 
 [Roberts v Mecosta Co General Hosp,
 
 466 Mich 57, 63; 642 NW2d 663 (2002) (citations omitted).]
 

 Further, we must consider the context in which the language is used.
 
 LeRoux v Secretary of State,
 
 465 Mich 594, 616-617; 640 NW2d 849 (2002). “[P]arts of a statute should be construed together in the context of the whole statute, bearing in mind the purpose of the Legislature, to arrive at an harmonious whole.”
 
 Slater v Ann Arbor Public Schools Bd of Ed,
 
 250 Mich App 419, 429; 648 NW2d 205 (2002). When addressing a claim under the CRA, Michigan courts, although not bound by federal precedent interpreting title vn, may find it highly persuasive.
 
 Chambers, supra,
 
 463 Mich 313;
 
 Barrett v Kirtland Community College,
 
 245 Mich App 306, 314; 628 NW2d 63 (2001);
 
 Meyer, supra
 
 at 569.
 

 With respect to coverage, Michigan’s CRA is similar to title vn, although the cra broadens the scope of employers covered. In other words, title vn applies to employers with fifteen or more employees, 42 USC 2000e(b),
 
 [12]
 
 whereas the CRA covers employers with one or more employees, MCL 37.2201(a). We do not believe that distinction necessarily means individual liability is included under the CRA. Rather, we believe that this more expansive definition of employer covered by the act merely increases the scope of employers covered rather than extending liability to individuals. Our Legislature sought to protect all employees, not just those of employers more likely to be able to
 
 *484
 
 withstand the costs associated with litigating discrimination claims under the CRA. See
 
 Miller v Maxwell’s Int’l Inc,
 
 991 F2d 583, 587 (CA 9, 1993) (both title vn and the adea limit liability on the basis of the number of employees, “in part because Congress did not want to burden small entities with the costs associated with litigating discrimination claims”). Consequently, we find that the cra’s definition of employer concerning the number of employees does not signal an intent by the Legislature to make individuals as well as employers liable under the act. Rather, we believe that the statutory language that addresses agents of the employer is the key portion of the statute relative to resolving this issue.
 

 In this respect, our Legislature used substantially similar language when including “agent” in the definition of employer under the cra (“and includes an agent of that person”), MCL 37.2201(a), as is found in title vn (“and any agent of such a person”), 42 USC 2000e(b). We believe that, like title vn, the language in the definition of “employer” concerning an “agent” of the employer was meant merely to denote respondeat superior liability, rather than individual liability. In fact, our Supreme Court recently observed that the reference to “an agent” in the cra’s definition of employer “addresses an employer’s vicarious liability for sexual harassment committed by its employees.”
 
 Chambers, supra,
 
 463 Mich 310. Further, we believe that the reasoning in
 
 Meagher v Wayne State Univ,
 
 222 Mich App 700; 565 NW2d 401 (1997), is consistent with our analysis.
 
 [13]
 
 There, when determining whether
 
 *485
 
 sanctions for a frivolous claim were properly awarded, this Court considered the trial court’s ruling that the plaintiff’s claim of age discrimination against three of the individual defendants was devoid of arguable legal merit.
 
 Id.
 
 at 728. This Court stated:
 

 The mere fact that MCL 37.2201(a); MSA 3.548(201)(a) defines “employer” as including an agent does not automatically authorize a claim against an agent. MCL 37.2202; MSA 3.548(202) defines the prohibited acts of the “employer.” It is one thing for an employee to file a claim against an employing entity . . . under agency principles for the individual or collective acts of its agents that give rise to an inference of discriminatory practices or acts, see, e.g.,
 
 Champion v Nation Wide Security, Inc,
 
 450 Mich 702, 712; 545 NW2d 596 (1996), it is quite another thing for an employee to file a claim against a particular agent for prohibited acts.
 
 [Meagher, supra
 
 at 728.]
 

 Read as a whole, the CRA envisions, in our opinion, employer liability for civil rights violations that result from the acts of its employees who have the authority to act on the employer’s behalf rather than individual liability for those civil rights violations. Further, had our Legislature intended individual, rather than employer, liability under the cra, it could have expressly stated so. Thus, we conclude that the cra provides solely for employer liability, and a supervisor engaging in activity prohibited by the cra may not be held individually liable for violating a plaintiff’s civil rights.
 
 [14]
 

 
 *486
 
 In sum, plaintiff failed to present evidence satisfying a prima facie case of quid pro quo harassment or hostile environment harassment against ntb, the cra does not provide for individual liability, and defendants were entitled to summary disposition as a matter of law.
 
 [15]
 

 IV. REMAINING CLAIMS ON APPEAL
 

 Next, plaintiff argues that the trial court erred in denying her an opportunity to amend her complaint to conform to the evidence in light of the dismissal of her claims under the CRA. After the dismissal of her cra claims, plaintiff sought to amend her complaint to include an assault and battery count against Wilkerson. We review for an abuse of discretion a trial court’s decision to grant or deny leave to amend.
 
 Weymers v Khera,
 
 454 Mich 639, 654, 658; 563 NW2d 647 (1997). An abuse of discretion exists when an unprejudiced person, considering the facts on which the trial court acted, would say that there was no justification or excuse for the ruling.
 
 Detroit/Wayne Co Stadium Authority v 7631 Lewiston, Inc,
 
 237 Mich App 43, 47; 601 NW2d 879 (1999).
 

 Here, plaintiff required leave of the court to amend the complaint. MCR 2.118(A)(2). Concerning motions to amend, our Supreme Court has explained:
 

 A motion to amend should ordinarily be granted, and should be denied only for the following particularized reasons:
 

 
 *487
 
 “ ‘[1] undue delay, [2] bad faith or dilatory motive on the part of the movant, [3] repeated failure to cure deficiencies by amendments previously allowed, [4] undue prejudice to the opposing party by virtue of allowance of the amendment, [and 5] futility
 
 [Weymers, supra
 
 at 658, quoting
 
 Ben, P Fyke & Sons, Inc v Gunter Co,
 
 390 Mich 649, 656; 213 NW2d 134 (1973).]
 

 Although parties should be afforded great latitude in amending their pleading before trial, that interest must be weighed against the interest of the parties and the public in the speedy resolution of disputes.
 
 Weymers, supra
 
 at 660. Delay, alone, does not warrant denial of a motion to amend, but delay resulting in actual prejudice suffices.
 
 Id.
 
 at 659. “The litigation may proceed to a point where the opposing party cannot reasonably be expected to defend against the amendment; this is an especially pertinent factor on the eve of, during, or after trial.”
 
 Fyke, supra
 
 at 663. Further, a defendant is entitled to notice of what claims he must defend against.
 
 Heins v Detroit Osteopathic Hosp Corp,
 
 150 Mich App 641, 645; 389 NW2d 141 (1986).
 

 [A] trial court may find prejudice when the moving party seeks to add a new claim or a new theory of recovery on the basis of the same set of facts, after discovery is closed, just before trial, and the opposing party shows that he did not have reasonable notice, from any source, that the moving party would rely on the new claim or theory at trial.
 
 [Weymers, supra
 
 at 659-660.]
 

 According to the trial court, it denied leave because “the pleadings make it clear that the cause of action was for a violation of the [cra] and was not in any way connected with allegations of assault and battery.” The trial court further noted that all the discov
 
 *488
 
 ery conducted was aimed toward defending sexual harassment claims and found no reason “to allow an amendment at this late date in order to allege what is basically a new cause of action.” In other words, the trial court’s denial of the motion to amend was based on its finding that defendant would have been prejudiced by the amendment. Plaintiff did not move to amend the complaint to include an assault and battery count against Wilkerson until more than
 
 V-k
 
 years after she filed her complaint. Further, the motion to amend was made after the close of discovery, after case evaluation, and after summary disposition had been granted to defendants. As the trial court recognized, the proposed amendment was prejudicial to Wilkerson because he had no notice that he would be defending against an assault and battery claim. We find no abuse of discretion.
 
 [16]
 

 Finally, plaintiff argues that the trial court erred in refusing to permit a “limited” evidentiary hearing concerning the reasonableness of the attorney fees that ntb and Wilkerson requested as case evaluation sanctions under MCR 2.403(0). A party who rejects a case evaluation is subject to sanctions if the party fails to improve its position at trial.
 
 Elia v Hazen,
 
 242 Mich App 374, 378; 619 NW2d 1 (2000).
 

 A trial court should hold an evidentiary hearing when a party is challenging the reasonableness of the attorney fees claimed,
 
 Miller v Meijer, Inc,
 
 219 Mich App 476, 479; 556 NW2d 890 (1996); however, if the parties created a sufficient record to review the issue, an evidentiary hearing is not required. See
 
 Head v
 
 
 *489
 

 Phillips Camper Sales & Rental, Inc,
 
 234 Mich App 94, 113; 593 NW2d 595 (1999);
 
 Giannetti Bros Constr Co, Inc v Pontiac,
 
 175 Mich App 442, 450; 438 NW2d 313 (1989). Here, defendants provided affidavits of defense counsel, itemized billing statements, and surveys of hourly rates from Michigan Lawyers Weekly and the Michigan Bar Journal. We find this evidence sufficient to support the trial court’s ruling concerning attorney fees, which the trial court awarded in an amount less than requested.
 

 Affirmed.
 

 [1]
 

 These defendants are not parties to this appeal. Pursuant to an October 17, 2001, order of this Court, the appeal relative to dart and ses “will remain closed and may be reopened upon written notification to this Court that the bankruptcy stay has been lifted, the bankruptcy proceedings have been dismissed, or a party to the case has obtained relief from the stay.”
 

 [2]
 

 The second count alleged religious and famihal/marital status discrimination. With regard to that count, the trial court granted summary disposition in favor of ntb and Wilkerson and that aspect of the case is not before this Court on appeal.
 

 [3]
 

 Wilkerson’s counterclaim was dismissed pursuant to stipulation and order on March 2, 2000.
 

 [4]
 

 As our Supreme Court has noted, “[t]hrough the Civil Rights Act, Michigan law recognizes that, in employment, freedom from discrimination because of sex is a civil right” and “[e]mployers are prohibited from violating this right.”
 
 Chambers v Trettco, Inc,
 
 463 Mich 297, 309; 614 NW2d 910 (2000).
 

 [5]
 

 In fact, in a sworn statement, plaintiff indicated that when she told Wojtaszek about the harassment, Wojtaszek encouraged her to tell ntb’s president.
 

 [6]
 

 Plaintiff also asserts that defendants and the trial court relied on inadmissible interview notes to support the motion for summary disposition. Because resolution of the issues raised on appeal does not hinge on the admissibility of the interview notes, we decline to reach that issue.
 

 [7]
 

 See
 
 Tomka v Seiler Corp,
 
 66 F3d 1295, 1313 (CA 2, 1995) (holding that “individual defendants with supervisory control over a plaintiff may not be held personally liable under Title vn”), abrogated on other grounds by
 
 Burlington Industries, Inc v Ellerth,
 
 524 US 742; 118 S Ct 2257; 141 L Ed 2d 633 (1998);
 
 Sheridan v E I DuPont de Nemours & Co,
 
 100 F3d 1061, 1078 (CA 3, 1996) (“we are persuaded that Congress did not intend to hold individual employees liable under Title vn”);
 
 Birkbeck v Marvel Lighting Corp,
 
 30 F3d 507, 510 (CA 4, 1994) (like title vn, the Age Discrimination in Employment Act [adea], 29 USC 621
 
 et seq.,
 
 limits civil liability to the employer);
 
 Grant v Lone Star Co,
 
 21 F3d 649, 653 (CA 5, 1994) (“title vn does not permit the imposition of liability upon individuals unless they meet title vn’s definition of ‘employer’ ”);
 
 Williams v Banning,
 
 72 F3d 552, 555 (CA 7, 1995) (a supervisor, in his individual capacity, does not fall within the definition of employer in title vn);
 
 Lenhardt v Basic Institute of Technology, Inc,
 
 55 F3d 377, 381 (CA 8, 1995) (“[e]very circuit that has considered the issue ultimately has concluded that an employee, even one possessing supervisory authority, is not an employer upon whom liability can be imposed under Title vn”);
 
 Miller v Maxwell’s Int’l Inc,
 
 ,991 F2d 583, 587-588 (CA 9, 1993) (concluding that individuals cannot be held liable for damages under title vn and the adea);
 
 Sauers v Salt Lake Co,
 
 1 F3d 1122,
 
 *481
 
 1125 (CA 10, 1993) (“[ujnder Title vn, suits against individuals must proceed in their official capacity; individual capacity suits are inappropriate”);
 
 Smith v Lomax,
 
 45 F3d 402, 403 (CA 11, 1995) (recognizing that employees cannot be held liable under title vn or the ADEA);
 
 Gary v Long,
 
 313 US App DC 403, 411; 59 F3d 1391 (1995) (“while a supervisory employee may be joined as a party defendant in a Title vn action, that employee must be viewed as being sued in his capacity as the agent of the employer, who is alone liable for a violation of Title vn”).
 

 [8]
 

 In
 
 Hall, supra,
 
 the district court also found significant that Michigan’s cea covers any employer “who has 1 or more employees,” and that remedies include damages.
 

 [9]
 

 MCR 7.215(1) provides in relevant part:
 

 (1) Precedential Effect of Published Decisions. A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule.
 

 [10]
 

 When addressing a claim under the CRA, Michigan courts are not bound by federal precedent interpreting title vn,
 
 Chambers, supra,
 
 463 Mich 313;
 
 Barrett v Kirtland Community College,
 
 245 Mich App 306, 314; 628 NW2d 63 (2001).
 

 [11]
 

 See
 
 Wathen, supra.
 

 [12]
 

 Title vn defines “employer” to mean “a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such a person.” 42 USC 2000e(b).
 

 [13]
 

 We acknowledge that the facts in
 
 Meagher
 
 are distinguishable from the facts in the present case because, unlike the individual defendants
 
 *485
 
 referred to in
 
 Meagher,
 
 Wilkerson allegedly participated in the challenged conduct and communications.
 

 [14]
 

 We note that a plaintiff can commence an action against the supervisor under traditional tort theories.
 

 [15]
 

 Because we affirm the trial court’s grant of summary disposition, we need not address plaintiffs issue concerning the trial court’s denial of her motion in limine.
 

 [16]
 

 To the extent that plaintiff relies on MCR 2.118(C)(1) in support of amendment, we find this rule inapplicable in the present circumstances and her argument unpersuasive.