Stuart NISHI, Plaintiff,

v.

SIEMENS AG, (Siemens Aktiengesellschaft), Siemens Automotive Corporation, Franz Wressnigg and John Sanderson, Defendants.

No. CIV.A.01–CV–73982.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 10, 2003.

Barry S. Fagan, Darcie R. Brault, Dib, Fagan, Royal Oak, MI, for Plaintiff.

Dana L. Rust, Michele L. Stoddard, Pending App, Kathleen M. McDaniel, McGuire, Woods, Richmond, VA, Robert M. Vercruysse, Vercruysse, Murray, Bingham Farms, MI, for Defendant.

## MEMORANDUM OPINION & ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

HOOD, District Judge.

### I. *Introduction*

This matter is before the Court on Defendants', Siemens AG and Siemens Automotive Corporation (Siemen Defendants) Motion for Summary Judgment. Defendants, Franz Wressnigg and John Sanderson, joined in their filing of a separate Motion for Summary Judgment.[1] The Siemen Defendants also filed a Reply Brief.

Plaintiff alleges that Defendants racially discriminated against him as he is an Asian–American of Japanese ancestry. Plaintiff also argues that Defendants discriminated against him due to his age. It is Plaintiff's assertion that, because of his youth (38 years of age at the time), he was terminated (reverse age discrimination). Plaintiff maintains that he has a viable cause of action under 42 U.S.C. § 1981 and M.C.L. § § 37.2201 et. seq., as he was denied pay raises, denied a promotion, subjected to a hostile work environment and was ultimately terminated.

### II. *Statement of Facts*

#### A. **Overview of the Arguments**

Plaintiff is an Asian American of Japanese ancestry. He was employed with Defendants from September 1993 until January 2001. Plaintiff was hired as a manager for Asian Accounts in the Siemens Automotive Group. Plaintiff contends that race and reverse age discrimination were the impetus' for his employment discharge in January 2001.

The Siemens Defendants assert that the reason for terminating Plaintiff began when he made repeated demands for large salary increases and continued to threaten to leave the company if those salary demands were not met. Defendants further contend that Plaintiff's Japanese ancestry had nothing to do with his termination. Plaintiff's Japanese language skills and his familiarity with Japanese culture were distinct advantages for him in his job as Director of Sales for Japanese automotive companies. Defendants also maintain that Plaintiff's claim of termination because of his youth is equally groundless due to the

---

1. Collectively, Siemens AG, Siemens Automotive Corporation, Franz Wressnigg and John Sanderson will be referenced as "Defendants."

fact that there were two other sales executives who were the same age as Plaintiff at the time of his termination.

Defendants John Sanderson and Franz Wressnigg filed a separate Motion for Summary Judgment alleging that there is no viable cause of action against them under the Elliott Larsen Civil Rights Act, as Michigan does not recognize employment discrimination claims against individual employees. In response, Plaintiff relied upon the fact that the case law which supported Defendants' position was on appeal to the Michigan Supreme Court and that this Court should not base its decision upon Defendant's authority, as the status of the law was in a state of flux. *Jager v. Nationwide Truck Brokers, Inc.*, 252 Mich. App. 464, 652 N.W.2d 503 (2002), *appeal denied*, 666 N.W.2d 668 (Mich.2003) (TABLE, NO. 122469, 122470).

### B. Claims Withdrawn At Oral Argument

Plaintiff withdrew his Elliott Larsen claim against Defendants, John Sanderson and Franz Wressnigg in light of *Jager v. Nationwide Truck Brokers, Inc.*, 252 Mich. App. 464, 652 N.W.2d 503 (2002), which held that the Elliott Larsen Civil Rights Act "provides solely for employer liability," and a supervisor engaging in prohibited activity may not be held liable for violating a plaintiff's civil rights. *Jager*, 252 Mich. App. at 485, 652 N.W.2d 503. However, Plaintiff's § 1981 claim remains against these Defendants. Plaintiff also withdrew his hostile work environment claim against all Defendants.

### C. Facts

The Siemens Defendants sell automotive supplies to original equipment manufacturers (OEMs) and certain OEM suppliers in the United States and abroad. Plaintiff, who was 30 years old and fluent in Japanese, was hired by Siemens Automotive in September/October 1993 as a Sales Man-

ager and was assigned to the company's Asian customers in the United States. Plaintiff's starting salary was $87,000.00 per year. *(Bynum Deposition, Exhibit 14)*. Plaintiff admits that Defendants did not discriminate against him based upon his age or Japanese ancestry at the time of his hire and that his pay and benefits were fair. *(Nishi Deposition, pg. 53)*.

In October 1995, Plaintiff was promoted to Director for North American Sales to Asian original equipment manufacturers. He was 32 years of age at the time of his promotion. *(Nishi Deposition, pg. 72, Exhibit 8)*. Plaintiff was pleased with his promotion and accompanying new salary of $98,670.00 per year. *(Nishi Deposition pp. 73–74, Exhibit 8)*. Although Defendants admit that Plaintiff's job performance was good enough to sustain his ability to fulfill his employment responsibilities, there were also a few performance issues which reflected negatively upon Plaintiff's employment record.

First, it is undisputed that Plaintiff had a poor working relationship with Defendants' colleagues in Japan and especially with Kimitake Kinugawa who was in charge of the Siemens office in Tokyo, Japan. *(Wressnigg Deposition, pp. 69–70 & Sanderson Deposition, pg. 239)*. However, in 1997, despite these problems, Plaintiff was assigned to the position of "acting" Key Account Manager. As "acting"Key Account Manager, Plaintiff was responsible for handling all of Honda's business, including business outside of the United States. Plaintiff was not promoted to the official Key Account Manager position for Honda because he and Mr. Kinugawa were unable to conduct themselves in civil and professional manner. *(Wressnigg Deposition, pg. 119)*. Promoting Plaintiff to Key Account Manager would have increased his contact with Mr. Kinugawa and that was not deemed a wise employ-

ment transition for either of the parties involved. Even though Plaintiff's new title as "acting" Key Account Manager was not an official promotion, his salary increased to $108,270.00 *(Bynum Deposition, Exhibit 14).*

Plaintiff's relationship with Mr. Kinugawa continued to deteriorate. As a result, Plaintiff was not promoted to Key Account Manager. However, he received a salary increase in October 1998 to $111,528.00. *(Bynum Deposition, Exhibit 14).* The relationship between Plaintiff and Mr. Kinugawa continued to decline and, as a result, Defendant Wressnigg terminated Mr. Kinugawa's employment. *(Wressnigg Deposition, pg. 121).* Mr. Kinugawa was replaced by another Japanese citizen. Plaintiff was not terminated, but was relieved of his duties as "acting" Key Account Manager and resumed his employment responsibilities as Director for Sales to Asian original equipment manufacturers. *(Nishi Deposition, pg. 249).*

Second, Defendants received several complaints about Plaintiff's management style: (1) Plaintiff was the worst manager Rod Schick ever had *(Rod Schick Declaration, ¶¶ 2–6);* (2) Plaintiff micro-managed every aspect of William Rea's job and Plaintiff was the primary reason why Mr. Rea left his employment with Defendants *(William Rea Declaration, ¶ 2);* (3) Roderick Brown, an African American, felt he was discriminated against by Plaintiff because of his race; *(Declaration of Roderick Brown, ¶ 3 & Perry Deposition, pg.3);* and (4) Plaintiff's micro-management style was a reason Tom Boltnik transferred out of Plaintiff's department into another department at Defendants' facility'. *(Boltnik Deposition, pg. 51)*

Third, Plaintiff failed to attend business meetings and other company functions. *(Bynum Deposition, pp. 285–86); (Perry Deposition, pp. 59–61);* (Whetter Deposition, pp. 61–62); *(Herbon Deposition, pg. 88); (Gillespie Deposition, pg. 74).*

### D. Plaintiff's Termination

#### 1. Defendants' Arguments

Defendants contend that Plaintiff was terminated because of his unreasonable demand for a pay increase from $111,528.00 to $150,000.00. Plaintiff was offered the official position as Key Account Manager/Executive (not "acting") for the Honda account. *(Nishi Deposition, pp. 260–61).* By Plaintiff's own admission, in conjunction with this promotion to Key Account Manager/Executive, Plaintiff also demanded the following: (1) authority over personnel decisions in the United States and in Japan; (2) authority to hire new management in Japan; (3) authority to meet with Honda officials in Japan without including Siemens' staff in the Tokyo office; (4) and a pay raise which would increase Plaintiff's salary to $150,000.00 per year. *(Nishi Deposition, Exhibit 29 ).* All of Plaintiffs non-economic demands were agreed to by Defendants. *(Nishi Deposition, pg.263).* However, after considering: (1) the fact that Plaintiff was requesting a 40% pay raise increase as opposed to the normal 10% to 15% pay raise increments awarded Siemens' employees; and (2) Plaintiff's salary demand greatly exceeded what other more senior executives were earning, Defendants were unwilling to pay Plaintiff his annual base salary demand of $150,000.00. *(Wressnigg Deposition, pp. 137–44).*

Despite the above mentioned performance issues, Plaintiff continued to receive promotions and pay raises during his employment with Defendants. A compromise was offered to Plaintiff. Defendant Sanderson offered Plaintiff a promotion, the title of "Account Executive–Honda" and 6% pay increase. *(Sanderson deposition, pp. 162–63, 177, 181–83).* Plaintiff rejected

this compromise offer. *(Nishi Deposition, pg. 286).* As a result of the parties' inability to reach an agreement on this matter, Defendant Wressnigg began looking for another person to assist with the Honda account in Japan. *(Wressnigg Deposition, 151–52).* Defendant Sanderson met with Plaintiff on January 4, 2001 in an effort to convince Plaintiff to accept the compromise offer. Plaintiff refused. On January 9, 2001, Defendants Sanderson and Wressnigg met for a final time to discuss Plaintiff's future with Siemens. Plaintiff was still unwilling to accept Defendants' offer. *(Sanderson Deposition, pg. 217).* On January 22, 2001, Plaintiff's employment with Siemens was officially terminated. *(Nishi Deposition, pg. 296).* At no time during Plaintiff's termination meeting or any other meeting did Plaintiff claim that he believed he was being discriminated against on the basis of his youth or Asian descent. *(Nishi Deposition, pp. 293–94).*

### 2. Plaintiff's Arguments

Plaintiff asserts that several incidents occurred during his employment with Siemens which led him to believe that his termination was due to his Japanese ancestry and his youth:

- Plaintiff was not officially recognized as a Key Account Manager during the period when he was "acting" Key Account Manager. As a result, his authority was undermined and he received no official recognition, pay raise or promotion for fulfilling those duties. *(Plaintiff's Answer to Defendant's Motion for Summary Judgment, pp. 4–5).*
- Plaintiff names four Caucasian males that he claims are similarly situated employees with Siemens and, because they are Caucasian, they were treated more favorably (John Sanderson, Scott Whetter, Walter Guertler and Vernon Gillespie). *(Plaintiff's Answer to Defendant's Motion for Summary Judgment, pg. 6).*
- Plaintiff asserts that he was discriminated against when he was not permitted to report as a Key Account Manager for Honda at the annual meeting of the automotive group in Germany in 1999. *(Plaintiff's Answer to Defendant's Motion for Summary Judgment, pg. 7 & Nishi Deposition, pg. 210).*
- Defendant Wressnigg made a comment that Mr. Kinugawa's replacement looked like Plaintiff, but had gray hair. *(Plaintiff's Answer to Defendant's Motion for Summary Judgment, pg. 8 & Nishi Deposition, pg. 206–08, 253).* Plaintiff also states that Defendant Wressnigg made numerous comments about Plaintiff's youthful appearance as being negative in dealing with Siemens' Honda clients. *(Plaintiff's Answer to Defendant's Motion for Summary Judgment, pg. 8).*
- Plaintiff claims that Defendant Wressnigg made a racial slur by insinuating that Japanese men had smaller genitalia than European men. *(Nishi Deposition, pp. 254–56).*
- Defendant Wressnigg, as previously stated, offered Plaintiff the key Account Manager position, however, Plaintiff states that the offer was prefaced with "you have matured and have become more experienced." *(Nishi Deposition, pp. 256, 260).* Plaintiff asserts that this language is an indication of reverse age discrimination.
- Plaintiff maintains that he was denied the appropriate recognition, title and salary as a part of the Key Account Manager position; and the Key Account Manager/Executive position was thereafter given to a Caucasian man of French descent.

### III. Standard of Review

As provided in Fed.R.Civ.Pro. 56(c), summary judgment "shall be rendered

forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The principles governing consideration of motions for summary judgment were redefined by the United States Supreme Court in a 1986 trilogy of cases: *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); and *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Sixth Circuit expressly adopted the Supreme Court trilogy's "new era" in summary judgment practice in its recent decision in *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir.1989). In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court held:

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of evidence that the plaintiff is entitled to a verdict ....

*Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir.2002). The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street*, 886 F.2d at 1479. A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. If the non-moving party, after sufficient opportunity for discovery, is unable to meet his or her burden of proof, summary judgment is clearly proper. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

The party who bears the burden of proof must present a jury question as to each element of the claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir.2000). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir.1991).

The "mere possibility" of a factual dispute is not enough. *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir.1986). Rather, in order to defeat summary judgment, a plaintiff "must come forward with more persuasive evidence to support [his or her] claim than would otherwise be necessary." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Where the defendant demonstrates that after a reasonable period of discovery the plaintiff is unable to produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment should be granted. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *See also, Street*, 886 F.2d at 1478–1480.

## IV.  *Applicable Law & Analysis*

### A.  Direct Evidence of Race and Reverse Age Discrimination

In order to prove a case of direct discrimination Plaintiff must demonstrate the existence of the employer's unlawful

motive without the benefit of presumption or inference. *Lytle v. Malady,* 209 Mich. App. 179, 530 N.W.2d 135 (1995). "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 926 (6th Cir.1999). It does not require the fact finder to draw any inferences to reach that conclusion. *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir.2000).

In this case, the Court finds that based upon the above set forth facts, there is no direct evidence of racial animus or reverse age discrimination in this matter. Plaintiff makes reference to alleged statements made by one or more of the individually named Defendants about the gray hair of another replacement employee of Asian ancestry, the growth, youth and maturity of Plaintiff and the genitalia of Asian and European men. However, Plaintiff's claims relative to these statements are in large part related to his hostile environment claim which he has voluntarily dismissed. In order to otherwise establish a viable race or age discrimination claim based upon the above referenced statements, Plaintiff must demonstrate a genuine issue of material fact that these statements were sufficiently persistent, severe or pervasive to rise to the level of an actionable discrimination claim. *Jackson v. Quanex,* 191 F.3d 647, 657 (6th Cir. 1999). A district court may not weigh the evidence or make credibility determinations because these are functions for the jury. *Id.* In order for this Court to accept these alleged statements as direct evidence of discrimination, there must be a finding that a genuine issue of material fact has been established that these statements were are sufficiently severe and pervasive. The Court cannot engage in the exercise of inferring, interpreting or otherwise construing what Defendants meant by those statements. The statements cited above would require such an analysis in order for a determination regarding the existence of discrimination to be made. These statements do not unequivocally connote discriminatory motives on the part of Defendants.

## B. Indirect Evidence of Race and Reverse Age Discrimination

In the absence of direct proof of discrimination, a plaintiff can prove his case under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, Plaintiff must establish a *prima facie* case of discrimination by showing that: (1) he was a member of a protected class; (2) he was discharged; (3) he was qualified for the position; and (4) he was replaced by a person outside the class. *See also, Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Defendants must then offer evidence of a reason other than discrimination for its action. *Id.* If Defendants can do so, Plaintiff must present sufficient evidence to: (1) raise a question of fact as to whether Defendants' proffered reason was pretextual; and (2) create a reasonable inference that age was a determinative factor in the decision to demote or terminate him. *Id.; Sprenger v. Fed. Home Loan Bank of Des Moines,* 253 F.3d 1106, 1111 (8th Cir.2001) (After the employer proffers a non-discriminatory reason, employee must "either introduce evidence to rebut the employer's justification as a pretext for discrimination, or introduce additional evidence proving actual discrimination.")

In this case, Plaintiff claims that he has been discriminated against not by reason of advanced age, but, rather, because he was considered too young for the Key

Account Manager position with all of the economic and non-economic benefits he was seeking. Michigan recognizes Plaintiff's cause of action under the Elliott Larsen Civil Rights Act. *Zanni v. Medaphis Physician Services Corp.*, 240 Mich.App. 472, 476–477, 612 N.W.2d 845 (2000). Plaintiff also claims that his Japanese ancestry was a factor in his termination which constitutes discrimination. Since the *McDonnell Douglas/Burdine* framework is not only applicable to claims brought under federal civil rights laws (42 U.S.C. § 1981), but also under state law discrimination claims, it is appropriate for the Court to analyze both of Plaintiff's claims together under the *McDonnell Douglas/Burdine* analysis. *Laugesen v. Anaconda Co.*, 510 F.2d 307 (6th Cir.1975); *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989).

### 1. Prima Facie Case of Race or Age Discrimination

■ It is well-established that the burden is on an employment discrimination plaintiff to establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

As to each element of the prima facie case, first, Plaintiff is in a protected class under the Elliott Larsen Civil Rights Act[2] because of his age under the reverse age discrimination theory and due to his Japanese heritage. Second, Plaintiff's employ-

ment was terminated. Third, Defendants have shown the Court that Plaintiff was qualified for the Key Account Manager position. The above detailed efforts in which Defendants engaged in an effort to keep Plaintiff as an employee of the company is demonstrative of Plaintiff's qualifications for the position he sought. Finally, Plaintiff was replaced by a Caucasian man named Kurt Schoepfle who is eight years older than Plaintiff. Factually, Plaintiff has met the four prong test the *McDonnell Douglas* and *Burdine* and has established a prima facie case of discrimination. However, the analysis does not end at this point. The burden now shifts to Defendants to offer evidence of a reason other than discrimination for their terminating Plaintiff.

### 2. Legitimate Non–Discriminatory Reason for Plaintiff's Discharge

Defendants have set forth a few negative points about Plaintiff's employment with the Company (unhappy subordinates, inability to get along with employees in the Tokyo office, controlling temperament, loss of employees due to disenchantment with Plaintiff's management style). However, Defendants state that Plaintiff was terminated because of the exorbitant economic demands that he wanted to accompany his promotion to the Key Account Manager position. It is undisputed that the parties met on more than one occasion about this job offer in an effort to arrive at a compromise regarding the Key Account Manager job position. Defendants claim that they

---

**2.** An employer shall not do any of the following:

    (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

    (b) Limit, segregate, or classify an employee or applicant for employment in a way that deprives or tends to deprive the employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of religion, race, color, national origin, age, sex, height, weight, or marital status.

refused to meet Plaintiff's demands because Plaintiff would then receive a higher salary than more senior employees. Plaintiff would then be paid a higher salary than some employees who had more difficult jobs; and Plaintiff would receive more money and more special perks than employees who had more experience. In addition, the salary increase Plaintiff requested would be equivalent to a 40% raise. Defendant Wressnigg stated that raises are typically given in 10% to 15% increments and to deviate so drastically from that practice for one person would be unfair. *(Wressnigg Deposition, pg. 142).* Therefore, Defendants chose to terminate Plaintiff and seek a replacement.

Defendants further argue that Plaintiff's Japanese heritage and Asian ethnicity were positive attributes and contributed to the decision to hire him into the company. As previously stated, Plaintiff hired in as a Sales Manager with an assignment to Asian customers in the United States. He was subsequently promoted to Director for North American Sales to Asian original equipment manufacturers. Plaintiff then took on the "acting" Key Account Manager position for the Honda account, which required management of not only the Honda account in the United States but also the Honda Account in Tokyo. Therefore, Defendants contend that it is groundless for Plaintiff to assert that he was terminated because of his Asian descent, when being Asian assisted Plaintiff with the very nature of his job.

Likewise, Defendants maintain the Plaintiff's reverse discrimination is equally baseless. When Plaintiff hired into the Company, he was 30 years old and was being paid $87,000.00. He received a promotion when he was 32 years old, with a new salary of $98,670.00. At the age of 34, Plaintiff took on the responsibilities of a Key Account Manager, although not officially promoted to the position. Despite the non-ceremonious nature of Plaintiff stepping into the Key Account Manager position, Plaintiff earned yet another salary increase totaling $108,770.00. At the age of 35, Plaintiff received another salary increase to $111,528.00. At the age of 37, Plaintiff was offered the Key Account Manager position for Honda, a compromise offer of a 6% pay raise and an agreement to meet all of Plaintiff's non-economic demands. Plaintiff was terminated at or about the age of 38 because of Plaintiff's unwillingness to compromise and his ultimatum that he would quit if Defendants did not meet his demands in full.

Finally, Defendants contend that there was a legitimate and non-discriminatory reason for not initially promoting Plaintiff to Key Account Manager. As previously stated, Mr. Kinugawa and Plaintiff had an extremely adversarial relationship. The Key Account Manager was required to spend time both in the United States and in Japan. Since Mr. Kinugawa was in Japan, Defendant Wressnigg did not believe it would be wise to place Plaintiff in a situation where he would have even more contact with Mr. Kinugawa. Their relationship continued to decline and it was not a reasonable business decision to create additional problems by putting two people who disliked each other intensely, into a situation where they were forced to work together even more. Courts recognize that personality conflicts between and amongst co-workers generates a non-discriminatory motive for making certain employment decisions. *Walker v. MCI Telecomm. Corp.,* 1999 WL 503534, *6, 1999 U.S. App LEXIS 16258, *17–18 (4th Cir. July 16, 1999) *(Exhibit H of Defendant's Reply Brief); Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir.1994).

Although Defendants did offer the position to another Japanese individual (a can-

didate also within Plaintiff's protected class), Defendants offered Plaintiff the position again after Mr. Kinugawa had left the business, one year later. Defendants argue that Plaintiff cannot claim discrimination when another individual of his same ancestry was hired for the position; and Plaintiff was offered the position he sought one year later.

Plaintiff's rebuttal to Defendants' argument is two-fold: (1) Defendants treated similarly situated employees more favorably; and (2) the individual hired as Key Account Manager in 2000 (after Plaintiff left the company) was a Frenchman who was almost 5 years older than Plaintiff. Plaintiff states that the following individuals are comparables who were receiving more salary than Plaintiff was requesting: Scott Whetter, Walter Guertler and Vernon Gillespie.

■ Under *Burdine*, a plaintiff can also make out a prima facie case by showing, in addition to the first three elements of the framework, that "a comparable non-protected person was treated better". As the Sixth Circuit has frequently phrased the requirements of a prima facie claim of disparate treatment using such a "comparable non-protected person was treated better" element as one of the requisites, the plaintiff must produce evidence which at a minimum establishes: (1) that he was a member of a protected class and (2) that for the same or similar conduct he was treated differently than similarly-situated non-minority employees. *Davis v. Monsanto Chemical Co.*, 858 F.2d 345 (6th Cir.1988); *Long v. Ford Motor Co.*, 496 F.2d 500 (6th Cir.1974).

■ It is fundamental that to make a comparison of plaintiff's treatment to that of non-minority employees, the plaintiff must show that the "comparables" are similarly-situated in all respects. *Stotts v. Memphis Fire Department*, 858 F.2d 289 (6th Cir.1988). To be deemed "similarly-

situated", the individuals with whom the plaintiff seeks to compare his treatment must have dealt with the same supervisor, have been assigned the same employment related responsibilities, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Lanear v. Safeway Grocery*, 843 F.2d 298 (8th Cir.1988) (plaintiff must prove that he and the white employee were similarly situated in all respects and that the other employee's acts were of comparable seriousness to his own); *Cox v. Electronic Data Systems Corp.*, 751 F.Supp. 680 (E.D.Mich. 1990).

Plaintiff's first comparable, Scott Whetter, is the same age as Plaintiff, but that is where the similarity ends. Mr. Whetter was Vice President and Key Account Executive for the Ford Motor account which is a much larger account than the Honda account (Ford had gross sales to Defendants in the 1999/2000 fiscal year of approximately 373 million euros compared to 73.5 million from Honda.) *(Sanderson Deposition, pg. 24; Herbon Deposition, Exhibit 1)*. Additionally, Plaintiff and Whetter were hired in at different times as well.

Walter Guertler was also Plaintiff's age, but he was the Vice President and Key Account Executive for the General Motors Account. General Motors was another account that was larger than the Honda Account and required more responsibility. Vernon Gillespie was also a Vice President. He was much older than Plaintiff and made substantially more money than Plaintiff. In fact none of these individuals made the same amount of money or were projected to make the same amount of money with bonuses and additional compensation.

From these facts, it is evident to the Court that the individuals identified by the Plaintiff are not comparables. Although they each have the same job title, they have different workload responsibilities. They also each report to different supervisors as they each work in divisions within Siemens different from Plaintiff. As a result, their salaries are dissimilar and their individual employment situations are equally as disparate. The Court does not find that Plaintiff has established a genuine issue of fact regarding the comparability of these individuals.

Plaintiff argues that he did not issue an ultimatum to Defendants regarding his $150,000.00 demand in salary or any other non-economic demand, nor did he threaten to leave his employment with Defendants or state that he had another employment offer. *(Nishi Deposition, pp. 275–77, 281–82).* Since Defendants argue that they were given an ultimatum by Plaintiff and were threatened by Plaintiff with his insinuations that he would quit to accept an outside offer if Defendants did not accept his demands and/or requests, Plaintiff contends that there is a genuine issue of material fact regarding the circumstances surrounding Plaintiff's termination. Accordingly, Plaintiff's claim should survive. The Court disagrees.

■ Assuming arguendo that Plaintiff did not issue an ultimatum as Defendants allege, all that is required of Defendants at this stage of *McDonnell Douglas* and *Burdine* framework is that they establish a legitimate nondiscriminatory basis for terminating Plaintiff. The Court finds that Defendant has cited several legitimate nondiscriminatory reasons, supported by the record and undisputed, to have terminated Plaintiff's employment (inability to get along with subordinates, inability to get along with co-workers, questionable management style, failure to attend company and other business related functions, inability by the parties to come to an understanding regarding the Key Account Executive promotion in 2000) (salary, title, duties, responsibilities, etc.).

The Court finds that Defendants have presented sufficient evidence to establish nondiscriminatory and legitimate reasons for Plaintiff's termination.

### 3. Establishment of Pretext

Because the Defendants articulated a legitimate non-discriminatory reason for Plaintiff's termination, to withstand summary judgment, Plaintiff must establish that the proffered reason was pretextual. "Pretext is 'more than a mistake or the part of the employer; pretext means a lie, specifically a phoney reason for some action'" *Miller v. American Family Mutual Insurance Company,* 203 F.3d 997, 1008 (7th Cir.2000).

> [I]t is not sufficient for the employee to show that his employer fired him for incorrect or poorly considered reasons. He must establish that the employer did not honestly believe the reasons it gave for terminating him.

*Pitasi v. Gartner Group, Inc.,* 184 F.3d 709, 718 (7th Cir.1999). "The law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with." *Hartsel v. Keys,* 87 F.3d 795, 801 (6th Cir.1996). The Court finds that Plaintiff has not met this burden of showing this Court Defendant's proffered reason for terminating Plaintiff's employment was pretextual. All that Plaintiff offers to rebut Defendants' articulated non-discriminatory reason is: (1) his deposition testimony stating that he did not threaten to quit, threaten to accept another offer or give an ultimatum as leverage to gain the fruits of his requests and demands for a salary of $150,000.00 and other non-economic privileges; (2) alleged comparables

that are not similarly situated with Plaintiff's circumstances; and (3) comments made by one or more individually named Defendants about a replacement employee's gray hair, the genitalia of European and Asian men and alleged non-specific comments Plaintiff's youthful appearance and maturity.

As to Plaintiff's first argument, as previously stated, even if Defendants are wrong about Plaintiff's alleged ultimatum, accepting Plaintiff's facts in the most favorable light, the record is supported by undisputed evidence by way of deposition testimony, declarations, affidavits and employment documents, which support the legitimate and non-discriminatory reasons for Plaintiff's termination. Assuming arguendo that Plaintiff did not make any threats of leaving the Company, the Court finds that it was not unreasonable for Defendants to believe Plaintiff was issuing an ultimatum based upon other documentation in the record. *(Bynum Deposition, Exhibit 31; Exhibit A of Plaintiff's Answer to Motion for Summary Judgment, ¶ 27, ¶ 35;Nishi Deposition, Exhibit 28; Wressnigg Deposition, pp 137–138, 144).* Courts have repeatedly held that the plaintiff's denial of the defendant's articulated legitimate reason without producing substantiation for the denial is insufficient for a race or age discrimination claim to withstand a motion for summary judgment. *Irvin v. Airco Carbide,* 837 F.2d 724 (6th Cir.1987); *Ridenour v. Lawson Co.,* 791 F.2d 52 (6th Cir.1986).

The Court finds that the comparables cited by Plaintiff are not similarly situated individuals that can be used in the *McDonnell Douglas* and *Burdine* analysis. Finally, assuming arguendo that the above referenced statements were made by one or more of the individually named Defendants, the Court does not find that these statements raise a genuine issue of fact relative to Defendants' conduct in terminating Plaintiff from his employment.

## V. *Conclusion*

This Court finds that Plaintiff's case reveals no genuine issue of material fact as to whether Defendants' action in terminating Plaintiff's employment constituted age or race discrimination. As such, summary judgment must be entered for Defendants in this matter.

IT IS HEREBY ORDERED that Defendants', Franz Wressnigg and John Sanderson's, Motion for Summary Judgment [Docket No: 47–1, filed January 10, 2003] is **GRANTED**; and this matter is dismissed with prejudice.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment [Docket No: 51–1, filed January 10, 2003] is **GRANTED**; and this matter is dismissed with prejudice.